STATE OF MAINE
CUMBERLAND, ss.

BUSINESS AND CONSUMER COURT
CIVIL ACTION
DOCKET NO. BCD-RE-2019-00014

RANDY SLAGER and
SYBIL BAIRD,

               Plaintiffs,

v.

LORI L. BELL and
JOHN W. SCANNELL,

               Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

ORDER DENYING IN PART AND
GRANTING IN PART DEFENDANTS'/
COUNTERCLAIM-PLAINTIFFS'
MOTION FOR PARTIAL
SUMMARY JUDGMENT

## INTRODUCTION

Before the court is the Motion for Partial Summary Judgment filed by Defendants/Counterclaim-Plaintiffs Lori Bell and John Scannell (together, the "Defendants") in the above-captioned matter. By and through their motion, Defendants request this court enter a summary judgment in their favor on (1) Plaintiffs'/Counterclaim-Defendants' cause of action for nuisance, and (2) the damages portion of their trespass claim.[1] For the reasons discussed below, Defendants' Motion for Partial Summary Judgment is DENIED IN PART and GRANTED IN PART.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the parties' statements of material facts and the

---

[1] Plaintiffs'/Counterclaim-Defendants' nuisance claim is contained within Count I of their Amended Complaint, and their trespass claim is contained within Count II. (Pls.' Am. Comp. ¶¶ 6-43, 44-8.)

With respect to the trespass claim, Defendants acknowledge that "there is likely a genuine issue of material fact sufficient to withstand summary judgment" and thusly limited their argument "to the damages portion only of Plaintiffs' common law trespass claim." (Defs.' Mot. Summ. J. 20 n.4.)

1

portions of the record referenced therein "disclose no genuine issues of material fact and reveal that one party is entitled to judgment as a matter of law." *Currie v. Indus. Sec., Inc.*, 2007 ME 12, ¶ 11, 915 A.2d 400 (citing M.R. Civ. P. 56(c)). "A material fact is one that can affect the outcome of the case, and there is a genuine issue when there is sufficient evidence for a [fact-finder] to choose between competing versions of the fact." *Lougee Conservancy v. CitiMortgage, Inc.*, 2012 ME 103, ¶ 11, 48 A.3d 774 (quoting *Stewart-Dore v. Webber Hosp. Ass'n*, 2011 ME 26, ¶ 8, 13 A.3d 773). The Court must view the record facts in the light most favorable to the non-moving party and must draw all reasonable inferences in favor of the same. *Watt v. UniFirst Corp.*, 2009 ME 47, ¶ 21, 969 A.2d 897 (citations omitted).

When the defendant is the moving party, it must establish that there is no genuine dispute of fact and that the undisputed facts would entitle it to judgment as a matter of law. *Diviney v. Univ. of Me. Sys.*, 2017 ME 56, ¶ 14, 158 A.3d 5. To withstand a defendant's motion for summary judgment, the plaintiff must in turn establish a prima facie case for each element of their cause of action. *Watt*, 2009 ME 47, ¶ 21, 969 A.2d 897 (citations omitted). If the plaintiff does not present sufficient evidence on the essential elements of their claim, then the defendants is entitled to a summary judgment thereon. *Id.*

## BACKGROUND

For the limited purpose of deciding Defendants' motion, the record evidence is sufficient to support the following material facts.

Plaintiffs Randy Slager and Sybil Baird (together, the "Plaintiffs") own the property at 196 Ocean Avenue, Town of Kennebunkport, State of Maine, which they purchased during the Fall of 2012. (Defs.' S.M.F. ¶¶ 1, 5.) Defendants own the neighboring property located at 200 Ocean Avenue. (Defs.' S.M.F. ¶ 2.)

Defendants purchased the 200 Ocean Avenue property during 2016. (Defs.' S.M.F. ¶ 16.)

2

The property featured a stone retaining wall and a patio, which were located adjacent to the boundary with Plaintiffs' property and within the side setback. (Defs.' S.M.F. ¶¶ 8-11, 25, 37; Pls.' S.M.F. ¶¶ 1, 3.) During February of 2018, Defendants began to plan a landscaping project and improvements to their property, including renovations to retaining walls and the patio area. (Defs.' S.M.F. ¶¶ 17-18, 29, 43, 52.)

Beginning during October of 2018, while the project was under design, Defendant Bell reached out to Plaintiff Slager more than once to inform the Plaintiffs about Defendants' renovation plans. (Defs.' S.M.F. ¶¶ 43-44.) Plaintiffs did not seek clarity about the extent of Defendants' project, but believed that Defendants would inform them about improvements that might impact their property and that Defendants would honor the Town's fifteen-foot side setback requirement. (Defs.' S.M.F. ¶¶ 47-48, 50.) Defendants, through their landscape architect, obtained the necessary permits approving their planned improvements from the Town on December 4, 2018. (Defs.' S.M.F. ¶¶ 22-24, 27, 31.)

Plaintiffs were unaware of the extent of Defendants' project until April of 2019, when Slager observed Defendants' construction of a raised patio and supporting retaining walls alongside the properties' boundary line, within the setback. (Defs.' S.M.F. ¶¶ 34, 46, 49, 54.) Slager reported his concern that these structures are located too close to the properties' boundary line to the Town's code enforcement office. (Defs.' S.M.F. ¶¶ 49, 55-56.) The Town conducted a site inspection of Defendants' property during July of 2019, which led to a suspension of Defendants' building permit due to purported non-compliance with the permit's conditions. (Defs.' S.M.F. ¶ 57.) The suspension was lifted during February of 2020, after which time Defendants were permitted to continue and complete the project. (Defs.' S.M.F. ¶¶ 59, 62-63.)

Plaintiffs' claims for nuisance and trespass are based upon activities and occurrences

3

related to Defendants' construction of the raised patio and supporting retaining walls next to the parties' property line.

## I.    Events giving rise to Plaintiffs' nuisance claim.

Plaintiffs' nuisance claim is based on numerous activities and occurrences, which can be grouped as follows: (1) Defendants' interference with Plaintiffs' use and enjoyment of their property, and (2) the safety risks to Plaintiffs and to their property imposed by an allegedly improperly constructed retaining wall on the Defendants' property. (Am. Compl. ¶¶ 6-43.)

### a.    Interferences with Plaintiffs' use and enjoyment of their property.

Slager does not believe that the Defendants considered the Plaintiffs' privacy in relation to their landscaping project construction. (Pls.' S.M.F. ¶¶ 115, 128.) According to the Plaintiffs, the proximity of Defendants' raised patio interferes with their use and enjoyment of their property by diminishing Plaintiffs' privacy and the privacy of their guests. (Defs.' S.M.F. ¶ 67; Pls.' S.M.F. ¶ 111.)

The raised portion of Defendants' renovated landscape ends approximately seven feet from Plaintiffs' home. (Pls.' S.M.F. ¶ 97.) It includes a hardscape patio and firepit gathering area, which is smaller and further away from the parties' boundary line than the patio that it replaced but are otherwise located in approximately the same area. (Defs.' S.M.F. ¶¶ 25, 64; Pls.' S.M.F. ¶¶ 3, 97.) Defendants placed new plantings and trees in the space between the new raised patio and Plaintiffs' property. (Defs.' S.M.F. ¶ 65.) In Plaintiffs' view, neither provide a meaningful visual or auditory buffer. (Pls.' S.M.F. ¶ 98.) Similarly, Defendants' privacy fence that runs along part of the parties' boundary does not obstruct the view into Plaintiffs' property from Defendants' patio. (Pls.' S.M.F. ¶ 136.)

The raised patio is close enough to Plaintiffs' home that one standing on it could look directly into their home's reading room. (Defs.' S.M.F. ¶ 70; Pls.' S.M.F. ¶¶ 99-101.) Plaintiffs

4

have observed others looking into their home from Defendants' patio. (Defs.' S.M.F. ¶ 69; Pls.' S.M.F. ¶¶ 103, 108.) Accordingly, now Plaintiffs cannot use their reading room in private without drawing the blinds. (Defs.' S.M.F. ¶ 70; Pls.' S.M.F. ¶ 110.)

Defendants' new raised patio is designed for social gatherings and is outfitted with speakers and lights. (Pls.' S.M.F. ¶ 102.) Plaintiff Baird's bedroom is directly above Plaintiffs' reading room. (Pls.' S.M.F. ¶ 104.) On numerous occasions, Baird's use of her bedroom was impacted by noise emanating from Defendants' patio, including from the speakers. (Defs.' S.M.F. ¶¶ 71-72; Pls.' S.M.F. ¶¶ 105-107.) On many of these occasions, Baird has had to sleep in another bedroom due to the noise. (Defs.' S.M.F. ¶ 72; Pls.' S.M.F. ¶ 106-107.) Baird also keeps her bedroom curtains drawn to prevent others looking into her bedroom from Defendants' patio. (Pls.' S.M.F. ¶ 109.)

During litigation in this matter, Defendants obtained a license to rent their property and have rented it to groups of up to ten guests on occasion between 2016 and 2021. (Pls.' S.M.F. ¶¶ 113, 139-144.)

**b. Safety risks imposed on Plaintiffs by Defendants' construction project.**

Plaintiffs' nuisance claim is also born from their concern with Defendant' construction of new retaining walls. (Defs.' S.M.F. ¶¶ 66, 75.) Defendants' project, in part, replaced the retaining wall that ran along the parties' property line with a new wall in that location ("Wall A11"). (Defs.' S.M.F. ¶¶ 32, 34; Pls.' S.M.F. ¶ 8.) As built, Wall A11 is approximately six-feet high, and it retains in excess of forty-eight inches of unbalanced fill. (Pls.' S.M.F. ¶ 20.)

Defendants engaged a contractor to construct Wall A11 according to the plans developed by their landscape architect. (Pls.' S.M.F. ¶ 22.) As designed and permitted, Wall A11 was intended to be part dry-stacked granite retaining wall and part cement masonry unit block wall

5

covered with veneer. (Defs.' S.M.F. ¶ 35; Pls.' S.M.F. ¶ 11.) However, it was constructed entirely as cement masonry unit block wall. (Defs.' S.M.F. ¶ 36; Pls.' S.M.F. ¶ 24.) This change was made due to the discovery of ledge running along Wall A11's designated location. (Pls.' S.M.F. ¶ 25.) The change required a departure from the landscape architect's plans. (Pls.' S.M.F. ¶¶ 13-14, 23, 61.) Due to this departure, no calculations as to the structural integrity of the cement masonry unit portions of Wall A11 were performed in advance of its construction. (Pls.' S.M.F. ¶ 21.)

Shortly after the construction of the main portion of Wall A11, Defendants' contractor and landscape architect quit the project. (Pls.' S.M.F. ¶ 28.) One reason given for their withdrawal from the project was that some elements of construction as planned were not feasible. (Pls.' S.M.F. ¶ 29.)

Plaintiffs' engineering expert, David Price, performed structural analyses of Wall A11. (Pls.' S.M.F. ¶ 65.) Price identified numerous serious deficiencies in the construction of Wall A11. (Pls.' S.M.F. ¶¶ 42, 47, 66-69, 72-73, 75.) He also observed and opined that Wall A11 is insufficiently supported by ledge, which places it at risk of failure. (Pls.' S.M.F. ¶ 71.) Price's calculations indicate that Wall A11 is in a state of distress, and, moreover, is noncompliant with the Town's building code. (Pls.' S.M.F. ¶ 80.) He estimates that Wall A11 is holding back thousands of pounds of fill in addition to supporting the raised patio structure. (Pls.' S.M.F. ¶¶ 89, 91-92.) In Price's opinion, Wall A11 is unsafe in its present condition, "basically hanging on," and must be demolished and rebuilt to code in order to protect Plaintiffs' health and safety and that of their property. (Pls.' S.M.F. ¶¶ 62-63, 87.)

According to Plaintiffs, Defendants construction of the raised patio area and the supporting retaining wall, Wall A11, diminished Plaintiffs' property value by $1,000,000. (Pls.' S.M.F. ¶ 132.) Likewise, in the future somebody will need to enter Plaintiffs' property to maintain or repair Wall

A11 due to its construction immediately next to the parties' property line. (Pls.' S.M.F. ¶¶ 10, 129.)

## II. Events giving rise to Plaintiffs' trespass claim.

Slager's belief that the Defendants did not consider the Plaintiffs' privacy in relation to their landscaping project construction was stoked, in part, by repeated trespasses onto Plaintiffs' property committed by Defendants' contractors during project construction, between January and August of 2019. (Pls.' S.M.F. ¶ 122.) On at least one occasion, Slager observed Bell direct a contractor to enter Plaintiffs' property. (Pls.' S.M.F. ¶¶ 123-124, 127.) Bell informed her contractors and workers that they were permitted on Plaintiffs' property for project construction purposes, but that was not the case as no permission had been sought from or granted by Plaintiffs. (Pls.' S.M.F. ¶¶ 124-125.)

Plaintiffs complained to Bell during May of 2019 that the contractors were entering their property to do work for the Defendants. (Defs.' S.M.F. ¶ 93.) Otherwise, Slager confronted the trespassing workers and redirected them to return to the Defendants' property himself. (Defs.' S.M.F. ¶ 94.) Once, Slager observed workers whom he had redirected to Defendants' property meet with Bell and then immediately return to Plaintiffs' property. (Pls.' S.M.F. ¶ 127.)

As constructed, there is no space for somebody to access, maintain or repair Wall A11 without trespassing onto Plaintiffs' property. (Pls.' S.M.F. ¶ 129.) In fact, Defendants' own expert inadvertently entered Plaintiffs' property when he was attempting to photograph Wall A11. (Pls.' S.M.F. ¶ 130.) On at least one occasion during March of 2021, rocks from one of Defendants' retaining walls fell onto Plaintiffs' property. (Defs.' S.M.F. ¶ 41.)

## DISCUSSION

The court addresses Defendants' arguments in support of their Motion for Partial Summary Judgment (the "Motion") in turn.

## I. Plaintiffs' assertion of a cause of action for invasion of privacy.

7

In their Motion, Defendants point out that Plaintiffs have never asserted a claim for invasion of privacy in this case. (Defs.' Mot. Summ. J. 9-10.) In opposition, Plaintiffs assert that they have pled and are pursuing a separate cause of action for invasion of privacy. (Pls.' Opp'n to Defs.' Mot. Summ. J. 5 & n.8.) In response, Defendants point out that none of the Plaintiffs' pleadings in this matter specifically name a cause of action for invasion of privacy. (Defs.' Reply to Pls.' Opp'n 3 & n.3.) Nor have Plaintiffs made a motion to amend their pleadings to specifically assert such a cause of action in addition to their claims for nuisance and trespass. Plaintiffs' operative pleading alleges that the "proximity of Defendants' raised patio to Plaintiff[s'] property" invaded Plaintiffs' privacy. (Am. Compl. ¶ 9.) Otherwise, Plaintiffs alleged that Defendants' contractors entered Plaintiffs' property during construction of Defendants' landscaping project. (Am. Compl. ¶¶ 45-47.)

Maine's notice pleading standard is forgiving, however it does not permit a party to shift their cause of action at any point in the proceeding. *Burns v. Architectural Doors & Windows*, 2011 ME 61, ¶ 21, 19 A.3d 823. "Although an initial pleading may be presented in general terms, certainly by the time the parties are addressing a motion for summary judgment, a plaintiff must be prepared to clearly identify the asserted ... causes of action and the elements of each claim." *Id.* When the plaintiff fails to do so, it is within the court's authority to define the claims that will be presented at trial. *Id.*

The elements that a plaintiff must prove to prevail on a claim for invasion of privacy for intrusion upon seclusion are: (1) an intentional, (2) physical intrusion, (3) upon premises occupied privately by a plaintiff for purposes of seclusion, and (4) that is highly offensive to a reasonable person. *Lougee Conservancy v. CitiMortgage, Inc.*, 2012 ME 103, ¶ 16, 48 A.3d 774 (citation omitted). "The defendant must intend as the result of his conduct that there be an intrusion upon

8

another's solitude or seclusion." *Knight v. Penobscot Bay Medical Center*, 420 A.2d 915, 918 (Me. 1980); *see also Loe v. Thomaston*, 600 A.2d 1090, 1093-94 (Me. 1991) (affirming entry of summary judgment for defendants on the plaintiff's invasion of privacy claim where the plaintiff presented no evidence that "the defendants physically invaded premises that she occupied for the purposes of seclusion"). Hence, a plaintiff claiming invasion of privacy for intrusion upon the seclusion of another must allege, at a minimum, a physical intrusion by the defendant upon premises occupied privately by the plaintiff for purposes of seclusion. *Nelson v. Me. Times*, 373 A.2d 1221, 1223 (Me. 1977).

Here, absent from Plaintiffs' pleadings are allegations that the Defendants physically intruded upon Plaintiffs' property. Plaintiffs allege within their trespass claim that Defendants' contractors entered their property. The Plaintiffs make no allegations that would support a conclusion that the workers' conduct was objectively highly offensive. In consideration of the contents of Plaintiffs' pleadings, as well as the more than three years of litigation in this matter when Plaintiffs might have amended them to make out an invasion of privacy claim with sufficient specificity, the court grants Defendants' Motion to the extent it asserts a distinct cause of action for invasion of privacy separate from Plaintiffs' cause of action for nuisance. At trial Plaintiffs will be permitted to argue that Defendants' use of their property interfered with Plaintiffs' use and quiet enjoyment of their own to prove their nuisance claim.

**II.    Whether the Defendants are entitled to a summary judgment on Plaintiffs' nuisance claim.[2]**

In the State of Maine, to prevail on a cause of action for private nuisance, a plaintiff must

---

[2] Plaintiffs' Amended Complaint alleges facts in support of Plaintiffs' nuisance claim regarding retaining walls built by the Defendants that abut Ocean Avenue ("Walls A1 and A2"). In their opposition to Defendants' Motion, Plaintiffs acknowledge that at this juncture, the nuisance claim is not premised on the safety threat posed by Walls A1 and A2. Accordingly, the court grants in part Defendants' Motion insofar as it requests a summary judgment on Plaintiffs' nuisance claim regarding Walls A1 and A2.

9

prove the following elements:

(1) The defendant acted with the intent of interfering with the use and enjoyment of the land by those entitled to that use;
(2) There was some interference with the use and enjoyment of the land of the kind intended, although the amount and extent of that interference may not have been anticipated or intended;
(3) The interference that resulted and the physical harm, if any, from that interference proved to be substantial such that the land is reduced in value because of the defendants' conduct and,
(4) The interference that came about under such circumstances was of such a nature, duration or amount to constitute unreasonable interference with the use and enjoyment of the land.

*West v. Jewett & Noonan Transp., Inc.*, 2018 ME 98, ¶ 14, 189 A.3d 277 (quoting *Charlton v. Town of Oxford*, 2001 ME 104, ¶ 36, 774 A.2d 366). Nuisance is an issue of fact. *See N. Sebago Shores, LLC v. Mazzaglia*, 2007 ME 81, ¶ 3, 926 A.2d 728; *see also Darney v. Dragon Prods. Co., LLC*, 2010 ME 39, ¶ 16, 994 A.2d 804.

In the context of a common law nuisance claim, "substantial" means a significant harm to the plaintiff, and "unreasonably" means that it would not be reasonable to permit the defendant to cause such an amount of harm intentionally without compensating for it. *Charlton*, 2001 ME 104, ¶ 36 n.10, 774 A.2d 366 (citation omitted). An "intentional interference" may be found even when the interference is intentional "merely in the sense that the defendant has created or continued the condition causing the interference with full knowledge that the harm to the plaintiff's interests are occurring or are substantially certain to follow." *Id.* ¶ 37 n.11. Lastly, a landowner who consents to activity on their property "that causes a nuisance is subject to liability for the nuisance if 'the [landowner] knows or has reason to know that the activity is being carried on and that it is causing or will involve an unreasonable risk of causing the nuisance.'"[3] *Town of Stonington v. Galilean*

---

[3] Hence, the court cannot, as a matter of law, accept Defendants' argument that they cannot be vicariously liable for nuisance due to the actions of their contractors and workers in connection with their landscaping project – either for looking into Plaintiffs' windows, or for entering Plaintiffs' property. (*See* Defs.' Mot. Summ. J. 15.)

10

*Gospel Temple*, 1999 ME 2, ¶ 21, 722 A.2d 1269 (quoting Restatement (Second) of Torts § 838 (Am. Law Inst. 1979)).

First, the record evidence, viewed in the light most favorable to Plaintiffs, is sufficient to support a finding that Defendants' interference with Plaintiffs' use and enjoyment of their property was "intentional." A fact-finder could conclude that Defendants "created or continued" the interference "with full knowledge that the harm to plaintiff's interests are occurring or are substantially certain to follow." For example, Defendants constructed the retaining Wall A11 in a location that generates a risk of interference with Plaintiffs' use and enjoyment of their property by individuals forced to trespass upon it in order to repair or maintain retaining Wall A11. Also, Slager confronted Plaintiffs' contractors and workers who trespassed onto Plaintiffs' property during construction of Defendants' project, only to observe them trespass a second time after meeting with Bell. Moreover, Defendants elected to reconstruct the raised patio, outfitted with lights and speakers, in an area immediately next to Plaintiffs' property. Plaintiffs have raised an issue of fact regarding whether Defendants reasonably should have known that their and their guests' use of the raised patio in the immediate proximity of Plaintiffs' reading room and Baird's bedroom could interfere with Plaintiffs' use and enjoyment of their property.

Next, regarding the second element of their nuisance claim, whether Defendants' construction and use and enjoyment of the raised patio area interferes with Plaintiffs' intended use and enjoyment of their property is a genuine issue of material fact. For example, the location and use of Defendants' new raised patio limits Plaintiffs' use and enjoyment of their reading room and of Baird's bedroom. The same can be said for Defendants' construction of retaining Wall A11 immediately next to the parties' property line, which imposes a safety risk and risks of future trespasses that interfere with Plaintiffs' use and enjoyment of their property.

11

Third, the substantiality of Defendants' cumulative interference with Plaintiffs' use and enjoyment of their property is also a disputed material fact. "[O]verall depreciation in a property's estimated market value is one method of demonstrating a substatantial interference." *Darney v. Dragon Prods. Co., LLC*, 640 F. Supp. 2d 117, 121 (D. Me. 2009). Slager testified that Defendants' construction of their raised patio area and the retaining Wall A11 diminished the value of Plaintiffs' property by $1,000,000.[4] "Property owners, by reason of their ownership alone, may state their opinion as to the fair market value of their property." *Garland v. Roy*, 2009 ME 86, ¶ 21, 976 A.2d 940 (quoting *Ferrell v. Cox*, 617 A.2d 1003, 1007 (Me. 1992)). Slager's opinion about the diminished value of Plaintiffs' property is competent evidence, for summary judgment purposes, that Defendants' interference was "substantial." *See Ferrell*, 617 A.2d at 1007.

Finally, in consideration of the "nature, duration, and amount" of Defendants' interferences as well as the factual nature of a nuisance inquiry, a fact-finder could determine from the record evidence, viewed in the light most favorable to Plaintiffs, that Defendants' interferences with Plaintiffs' use and enjoyment of their property were "unreasonable." Foremost in Plaintiffs' view, Defendants constructed Wall A11 in a location and manner such that it imposes a safety risk upon Plaintiffs in their use and enjoyment of their property. The record is also sufficient to establish that Defendants' disturbances to Plaintiffs' use and enjoyment of their reading room and Baird's bedroom were not isolated incidents and happened more than on one lone occasion. With these disputed material facts in view, the court cannot conclude that Defendants' intrusions were not objectively "unreasonable" as a matter of law.

---

[4] Plaintiffs submitted a statement of material fact declaring the opinion of Plaintiffs' designated expert real estate appraiser that Defendants' conduct in this matter diminished the value of Plaintiffs' property. (Pls.' S.M.F. ¶ 137.) However, in support of this statement of material fact Plaintiffs cite to an exhibit supplied during the expert's deposition. That exhibit is unaccompanied in the record by (1) an affidavit by the expert, and (2) the deposition transcript, or the relevant excerpts therefrom. Thus, the court sustains Defendants' hearsay objection to admission into the summary judgment record of this statement of material fact.

12

For the reasons discussed above, the court declines to grant a summary judgment and denies Defendants' Motion with respect to Plaintiffs' Count I for nuisance.[5]

### III. Whether the Plaintiffs are barred from recovering punitive damages on their trespass claim.

Defendants argue that they are entitled to a summary judgment on Plaintiffs' trespass claim to the extent Plaintiffs seek to recover punitive damages, and that Plaintiffs' recovery for any alleged trespass must be limited to nominal damages. (Defs.' Mot. Summ. J. 20 & n.4.) As support for this argument, Defendants point to Slager's deposition testimony stating that Plaintiffs suffered neither property damage nor personal injury as the result of any trespass. (Defs.' S.M.F. ¶ 95.) Punitive damages are unavailable to a claimant absent an award of compensatory or actual damages based on the defendants' tortious misconduct. *Zemero Corp. v. Hall*, 2003 ME 111, ¶¶ 10-11, 831 A.2d 413 (quoting *DiPietro v. Boynton*, 628 A.2d 1019, 1025 (Me. 1993)); *Jolovitz v. Alfa Romeo Distribs. of N. Am.*, 2000 ME 174, ¶ 11, 760 A.2d 625.

Viewing the summary judgment record in the light most favorable to Plaintiffs, there are disputes of material fact as regards Plaintiffs' entitlement to compensatory or actual damages. On one hand, Slager stated that Plaintiffs have not suffered property damage or personal injury as a result of the alleged trespasses. (Defs.' S.M.F. ¶ 95.) On the other, Slager testified that Plaintiffs are injured by continuing trespasses, and that the value of Plaintiffs' property is consequently diminished by $1,000,000. (Pls.' S.M.F. ¶¶ 129, 132.) Additionally, he testified that Plaintiffs seek to recover damages for their common law trespass claim under any applicable legal theory. (Pls.' S.M.F. ¶ 131; Defs.' S.M.F. ¶ 96.) In light of this record evidence, a summary judgment for

---

[5] Regarding the safety of retaining Wall A11, neither party cited any controlling Maine authority in support of their position. The court declines to research that issue any further. Hence, the court is not aware of a legal basis to grant summary judgment for Defendants to the extent Plaintiffs rely on the allegedly compromised safety of retaining Wall A11 as a basis for their nuisance claim.

13

Defendants limiting Plaintiffs' ability to recover compensatory or actual damages, and resultingly punitive damages, is unwarranted.

## CONCLUSION

Based on the foregoing, the entry will be: Defendants'/Counterclaim-Plaintiffs' Motion for Partial Summary Judgment is GRANTED IN PART on Plaintiffs' standalone invasion of privacy claim and on Plaintiffs' nuisance claim respecting the retaining Walls A1 and A2, and is otherwise DENIED IN PART on the balance of Plaintiffs' nuisance claim and on the question of Plaintiffs' ability to recover punitive damages on their trespass claim.

So ordered.

The Clerk is requested to enter this Order on the Docket, incorporating it by reference pursuant to Maine Rule of Civil Procedure 79(a).

Date: 5/9/23

Thomas R. McKeon
Justice, Business & Consumer Court

Entered on the docket: 05/09/2023

14

STATE OF MAINE
CUMBERLAND, ss.

BUSINESS AND CONSUMER COURT
CIVIL ACTION
DOCKET NO. BCD-RE-2019-00014

RANDY SLAGER and
SYBIL BAIRD,

                    Plaintiffs

v.

LORI L. BELL and
JOHN W. SCANNELL,

                    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

ORDER GRANTING PLAINTIFFS'/
COUNTERCLAIM-DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
ON SLANDER OF TITLE

## INTRODUCTION

Before the court is a motion for summary judgment filed by Plaintiffs'/Counterclaim-Defendants' Randy Slager and Sybil Baird (collectively, "Plaintiffs").[1] By and through their motion, Plaintiffs request a summary judgment on the slander of title claim contained in Count III of Defendants'/Counterclaim-Plaintiffs' amended counterclaim (the "Motion"). For the reasons discussed below, the court GRANTS Plaintiffs' Motion.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the parties' statements of material facts and the portions of the record referenced therein "disclose no genuine issues of material fact and reveal that one party is entitled to judgment as a matter of law." *Currie v. Indus. Sec., Inc.*, 2007 ME 12, ¶ 11, 915 A.2d 400 (citing M.R. Civ. P. 56(c)). "A material fact is one that can affect the outcome of the case, and there is a genuine issue when there is sufficient evidence for a fact finder to choose

---

[1] Plaintiff Baird was named a Counterclaim-Defendant by Defendants'/Counterclaim-Plaintiffs' Amended Counterclaim filed with this court on June 6, 2022. (Pls.' S.M.F. ¶ 14.)

1

between competing versions of the fact." *Lougee Conservancy v. CitiMortgage, Inc.*, 2012 ME 103, ¶ 11, 48 A.3d 774 (quoting *Stewart-Dore v. Webber Hosp. Ass'n*, 2011 ME 26, ¶ 8, 13 A.3d 773). The Court must view the record facts in the light most favorable to the non-moving party and must draw all reasonable inferences in favor of the same. *Watt v. UniFirst Corp.*, 2009 ME 47, ¶ 21, 969 A.2d 897 (citations omitted).

When the defendant is the moving party, it must establish that there is no genuine dispute of fact and that the undisputed facts would entitle it to judgment as a matter of law. *Diviney v. Univ. of Me. Sys.*, 2017 ME 56, ¶ 14, 158 A.3d 5. To withstand a defendant's motion for summary judgment, the plaintiff must in turn establish a prima facie case for each element of their cause of action. *Watt*, 2009 ME 47, ¶ 21, 969 A.2d 897 (citations omitted). If the plaintiff does not present sufficient evidence on the essential elements of their claim, then the defendants is entitled to a summary judgment thereon. *Id.*

## BACKGROUND

For the limited purpose of deciding Plaintiffs' Motion, the record evidence is sufficient to support the following material facts.

The parties are the owners of neighboring properties on Ocean Avenue in the Town of Kennebunkport, State of Maine. (Pls.' S.M.F. ¶¶ 1-2.) On or about November 1, 2019, Slager filed a three-count Complaint that initiated the present lawsuit against Defendants. (Defs.' S.M.F. ¶ 1.) On December 23, 2019, Slager filed an Amended Complaint. (Pls.' S.M.F. ¶ 3; Defs.' S.M.F. ¶ 6.) Neither of these filings state that "Title to Real Estate is Involved" in the lawsuit. (Defs.' S.M.F. ¶¶ 2, 7.) The Summary Sheet that Slager filed with the Complaint also does not indicate that title to real estate is involved in this case, nor does it qualify the case as a "Title Action." (Defs.' S.M.F. ¶¶ 3-4.)

2

On March 16, 2020, Slager received an email from his counsel Attorney David Lourie, wherein Attorney Lourie stated that he thought Slager "should file a *lis pendens* in case [Defendants] sell out, and also to show we are serious." (Defs.' S.M.F. ¶ 9.) Attorney Lourie was not aware of any plan of the Defendants' to sell their property. (Defs.' S.M.F. ¶ 10.) Slager replied, in part, "[n]ow is better than later to me," or, in effect "if you're going to do it, then do it" sooner rather than later. (Defs.' S.M.F. ¶ 12.) On March 22, 2020, Attorney Lourie provided Slager with a copy of the Notice of *Lis Pendens* at issue (the "Notice") and stated that it would "put the world on notice of the lawsuit, and give it priority over claims of future mortgagees and purchasers of [Defendants'] property." (Defs.' S.M.F. ¶ 15.) Attorney Lourie believed this was a valid basis for recording the Notice. (Pls.' S.M.F. ¶¶ 35-36; Defs.' S.M.F. ¶ 20.) Slager, through Attorney Lourie, caused the Notice to be recorded against Defendants' Ocean Avenue property on April 3, 2020. (Pls.' S.M.F. ¶ 4.)

The Notice provides, in pertinent part:

Plaintiff hereby provides notice pursuant to 14 M.R.S. § 4455 of the Complaint filed by Plaintiff Randy Slager against Defendants Lori L. Bell and John W. Scannell originally filed in York County Superior Court on November 1, 2019 as RE-ALF-RE 19-75 concerning property located at 200 Ocean Avenue, Kennebunkport, York County Maine, the property being further described in a deed recorded at the York County Registry of Deeds in Book 17372, Page 727, which action was later transferred to the Business & Consumer Court.[2]

---

[2] Section 4455 provides:

No action in which the title to real estate is involved is effectual against any person not a party thereto or having actual notice thereof until either:

**1. Attachment made and recorded.** An attachment of such real estate is duly made and recorded in the registry of deeds, in and for the county or district in which such real estate is situated, in the same manner as attachments of real estate in other actions are now recorded; or

**2. Certificate recorded.** A certificate setting forth the names of the parties, the date of the complaint and the filing thereof and a description of the real estate in litigation as described in said complaint, duly certified by the clerk of courts in and for the county where said complaint is pending is recorded in the registry of deeds in the county or district in which such real estate is situated.

14 M.R.S. § 4455 (2022).

3

(Pls.' S.M.F. ¶ 42.)

Slager had seen the term "*lis pendens*," but he had not heard of the device before and did not know what the term meant. (Pls.' S.M.F. ¶ 24; Defs.' S.M.F. ¶ 11.) Slager did not ask Attorney Lourie what the term meant, but he testified during his deposition that he understood that the Notice was one of many papers Attorney Lourie indicated would be filed with the court and that Attorney Lourie informed him about what the Notice covered.[3] (Pls.' S.M.F. ¶¶ 24, 33; Defs.' S.M.F. ¶ 11.) Likewise, Slager did not wonder what the Notice was, whether its recording was appropriate, or what the impact of it might be on Defendants. (Defs.' S.M.F. ¶ 11.) He did not undertake any independent research on the topic. (Pls.' S.M.F. ¶ 17.) Attorney Lourie advised Slager that the filing of a notice of *lis pendens* was a recommended and normal procedure. (Pls.' S.M.F. ¶ 25; Defs.' S.M.F. ¶ 11.)

On April 7, 2020, Defendants, by and through counsel, wrote to Attorney Lourie to notify Slager that the Notice was improper, and requested that it be withdrawn. (Defs.' S.M.F. ¶ 26.) Defendants also requested that Attorney Lourie provide authority for his position that the Notice was proper. (Defs.' S.M.F. ¶ 27.) Attorney Lourie refused Defendants' requests. (Defs.' S.M.F. ¶ 28.) Defendants filed a Motion to Cancel Notice of *Lis Pendens* in this matter on April 13, 2020, requesting that this court cancel the Notice on the grounds that Slager's Amended Complaint did not involve claims affecting title to real estate. (Pls.' S.M.F. ¶ 5; Defs.' S.M.F. ¶ 32.)

By order docketed April 30, 2020, the court granted Defendants' Motion to Cancel Notice of *Lis Pendens*, Order on Defendants' Motion to Cancel Notice of *Lis Pendens*, *Slager v. Bell*, No. BCD-RE-2019-00014, slip op. at 1-2 (Me. B.C.D. Apr. 30, 2020) (Murphy, J.). (Pls.' S.M.F. ¶ 6;

---

[3] Slager was deposed on July 8, 2022, at which time he was asked a series of questions by Defendants about the Notice. (Pls.' S.M.F. ¶ 16.) During the deposition, Slager reaffirmed that the only communications that he had with counsel concerning the Notice comprised his email exchange with Attorney Lourie. (Pls.' S.M.F. ¶ 23.)

4

Defs.' S.M.F. ¶ 36.) In its order, the court stated that "[w]hile the issue presented has not been directly addressed by the Law Court, this [c]ourt is persuaded by the Superior Court's decision in *Brunswick Citizen's for Collaborative Government v. Town of Brunswick*" and granted Defendants' motion because "title for the real estate is not at issue in this case."[4] (Defs.' S.M.F. ¶¶ 37, 45.) Slager caused a copy of the order to be recorded with the York County Registry of Deeds on May 11, 2020. (Pls.' S.M.F. ¶ 7.)

On May 5, 2020, Defendants filed an answer to Slager's Amended Complaint, as well as their counterclaim that included their cause of action for slander of title related to the Notice. (Pls.' S.M.F. ¶¶ 8-9; Defs.' S.M.F. ¶ 38.) Slager filed a Motion to Dismiss Defendants' counterclaim. (Pls.' S.M.F. ¶ 10; Defs.' S.M.F. ¶ 39.) Regarding Defendants' counterclaim for slander of title, Slager argued that the Notice was entitled to absolute privilege, that it did not assert a claim to the title to Defendants' property, and that Defendants' allegations were otherwise insufficient to support the cause of action. (Pls.' S.M.F. ¶ 11; Defs.' S.M.F. ¶ 39.)

On July 15, 2021, the court issued an order wherein it denied Slager's Motion to Dismiss with respect to Defendants' counterclaim for slander of title, Order on Counterclaim-Defendant's Motion to Dismiss, *Slager v. Scannell*, No. BCD-RE-2019-00014, 2021 Me. Bus. & Consumer LEXIS 36 (July 15, 2021) (Murphy, J.). (Pls.' S.M.F. ¶ 12; Defs.' S.M.F. ¶ 40.) Regarding Slager's claim that the Notice is entitled to absolute privilege, the court reasoned that Defendants' allegation that the litigation does not concern title to their property "at least generates an inference that the filing was 'unnecessary' at [the motion to dismiss] stage of the case where the [c]ourt must accept the well-pleaded allegations as true and view the complaint in the light most favorable to the [Defendants]," *Slager*, 2021 Me. Bus. & Consumer LEXIS 36, at *12. (Defs.' S.M.F. ¶ 40.)

---

[4] The court referred to *Brunswick Citizens for Collaborative Government v. Town of Brunswick*, No. AP20170006, 2017 WL 6513574 (Me. Super. March 16, 2017).

5

Further, the court stated that "[w]hile the Law Court has upheld the application of privilege to a slander of title claim at the motion to dismiss stage, *Raymond* [*v. Lyden*], 1999 ME 59, ¶ 6, 728 A.2d 124, the [c]ourt believes that determination is better left for a different procedural stage in the context of this case," *Slager*, 2021 Me. Bus. & Consumer LEXIS 36, at *13. (Pls.' S.M.F. ¶ 13; Defs.' S.M.F. ¶ 40.)

## DISCUSSION

To prevail on a slander of title claim, a plaintiff must prove the following elements: (1) a publication of a slanderous statement disparaging claimant's title; (2) that was false; (3) made with malice or reckless disregard of its falsity; and (4) that caused actual or special damages. *Raymond v. Lyden*, 1999 ME 59, ¶ 6 n.6, 728 A.2d 124 (citation omitted). One limitation placed upon this species of defamation is the litigation privilege; "[a] party to a private litigation is privileged to publish slanderous material concerning the title of another 'in the institution of ... a judicial proceeding in which he participates, *if the matter has some relation to the proceeding.*'" *Id.* ¶ 6 (quoting Restatement (Second) of Torts §§ 635, 587 (Am. Law Inst. 1977)) (emphasis supplied). "The privilege is absolute and 'protects a party to a private litigation ... from liability ... irrespective of his purpose in publishing the defamatory matter, of his belief in its truth or even his knowledge of its falsity.'" *Id.* (quoting Restatement (Second) of Torts § 587 cmt. a).

## I.   Whether the Law of the Case Doctrine bars Plaintiffs' Motion.

In their opposition to Plaintiffs' Motion, Defendants first argue that the law of the case doctrine bars Plaintiffs' argument that they are entitled to summary judgment on Defendants' slander of title counterclaim. (Defs.' Opp'n to Pls.' Mot. Summ. J. 8.) Specifically, Plaintiffs argue that in denying Slager's Motion to Dismiss, this court ruled that the Notice consists of a statement that Slager was engaged in litigation involving title to Defendants' property. (*Id.*) The

6

law of the case doctrine requires a trial court justice to not, in a subsequent proceeding involving the same case, overrule or reconsider a prior decision by another justice. *Grant v. Saco*, 436 A.2d 403, 405 (Me. 1981). However, the doctrine is "not as rigidly applied as the doctrine of *res judicata*." *Id.* (citation omitted). For example, "the rule does not serve as a complete bar to reconsideration of an issue when the prior ruling is provisional." *Id.* (citation omitted).

Here, in its provisional Order on Counterclaim-Defendant's Motion to Dismiss, the court specifically declined to decide whether the Notice is entitled to absolute privilege. It specifically left that decision for a procedural stage with a more robust record; one different than the motion to dismiss. *Slager*, 2021 Me. Bus. & Consumer LEXIS 36, at *13. Even if Defendants are correct that the facts that the Notice contains a false statement and was thusly unnecessarily and improperly filed are already established, they are not dispositive concerning Plaintiffs' fault. *See Raymond*, 1999 ME 59, ¶ 6, 728 A.2d 124 (citation and quotation marks omitted). Thus, the law of the case doctrine does not apply to the determination of absolute privilege.

## II.     Whether the Notice is entitled to the absolute "litigation privilege."

As noted above, in Maine a party is not liable for publication of otherwise slanderous material if there is a pending judicial proceeding involving the publishing party and the party about whom the publication is made, and the subject matter of the publication has some relation to that proceeding. *Id.* (citation and quotation marks omitted).

Each prong of the test articulated in *Raymond* are satisfied in this case; there was a pending proceeding at the time when the Notice was recorded, and the Notice relates to that proceeding. *Accord Seagull Condo. Ass'n v. First Coast Realty & Development, LLC*, No. CV-09-93, 2012 Me. Super. LEXIS 103, at *8, *10-12 (July 12, 2012) (finding that the plaintiff's notice of *lis pendens*, which referenced it's amended complaint, was entitled to absolute privilege, and declining to

7

accept the plaintiff's act of filing the notice of *lis pendens* as a factual basis for the defendant's slander of title action); *Pond Place Partners, Inc. v. Poole*, 567 S.E.2d 881, 888-97 (S.C. Ct. App. June 17, 2002) (discussing cases); *Marroco v. Hill*, No. 2:12-CV-28 JCM, 2012 U.S. Dist. LEXIS 72270, at *5-6 (D. Nev. May 24, 2012); *Duncan Fam. Tr. v. Chesapeake Expl., LLC*, No. 4:08-cv-325, 2008 U.S. Dist. LEXIS 123281, at *4-6 (E.D. Tex. Nov. 21, 2008); *Ex parte Boykin*, 656 So. 2d 821, 826 (Ala. Civ. App. Aug. 19, 1994).

There is no question there was a pending proceeding. Furthermore, the Notice has some relation to the proceeding, which involved a dispute over construction on the Defendant's property. The court ultimately ruled that the litigation over the Defendant's retaining wall did not involve title as required by statute and that the Notice should be dissolved. That outcome was not certain. There is no Law Court precedent on the issue. Although it turned out to be wrong, Plaintiff, relying on the advice of counsel, recorded the Notice. The privilege allows room for error. That is why the publication need only be related to the proceeding. That is the case here.

The Notice's representation that "title to real estate is involved" in the underlying proceeding resulting from its citation to section 4455 may be false. Consistent with longstanding public policy observed in the State of Maine, the litigation privilege is broadly construed to protect even false statements from liability. *See Raymond*, 1999 ME 59, ¶ 6, 728 A.2d 124 (citation and quotation marks omitted); *Garing v. Fraser*, 76 Me. 37, 42 (Me. 1884). It applies here to protect Plaintiffs from liability related to their publication of the Notice.

## CONCLUSION

Based on the foregoing, the entry will be: Plaintiffs'/Counterclaim-Defendants' Motion for Summary Judgment on Count III of Defendants'/Counterclaim-Plaintiffs' Amended Counterclaim and cause of action for slander of title is GRANTED.

8

So ordered.

The Clerk is requested to enter this Order on the Docket, incorporating it by reference pursuant to Maine Rule of Civil Procedure 79(a).

Date: 5/2/2023

Thomas R. McKeon
Justice, Business & Consumer Court

Entered on the docket: 05/03/2023

STATE OF MAINE
CUMBERLAND, ss.

BUSINESS AND CONSUMER COURT
CIVIL ACTION
DOCKET NO. BCD-RE-2019-14

RANDY SLAGER and )
SYBIL BAIRD, )
)
          Plaintiffs )
)
)
v. )          ORDER
)
)
LORI L. BELL and )
JOHN W. SCANNELL, )
)
          Defendants. )

Before the court is Defendants'/Counterclaim-Plaintiffs' Lori L. Bell and John W. Scannell ("Defendants") request that this court order 1) that Defendants be permitted to reconvene the deposition of Plaintiff/Counterclaim-Defendant Randy Slager, 2) that Slager must answer questions about his communications with counsel concerning the Notice of *Lis Pendens* at issue in this matter ("Notice"), and 3) that Defendants be permitted to depose Plaintiffs' former counsel Attorney David Lourie (and/or other counsel with whom Slager testifies he communicated concerning the Notice) about the Notice and without the imposition of attorney-client privilege. Memoranda of Law were submitted by the parties for consideration by the court following the Rule 26(g) conference held on August 8, 2022. For the reasons set forth below, Defendants' request is GRANTED. Defendants may conduct narrow discovery of Slager that is strictly limited in scope to communications with former counsel about the Notice.

1

## BACKGROUND

Plaintiffs asserted claims for nuisance and trespass against Defendants. (Def.'s Br. 2.) Plaintiffs, through their counsel, recorded the Notice, which is dated March 19, 2020, against Defendants' property at the York County Registry of Deeds on or about April 2, 2020. (Pl.'s Br. 2; Def.'s Br. 2.) On April 2, 2020, Defendants were informed by Plaintiffs' former counsel that the Notice was recorded. (Def.'s Br. 2.) Defendants objected to the filing of the Notice on the basis that Plaintiffs had no claim against Defendants' title to real property, and they requested Plaintiffs' former counsel withdraw it. (Pl.'s Br. 2; Def.'s Br. 3.) Plaintiffs' former counsel declined to do so. (Pl.'s Br. 2.)

Defendants filed a Motion to Discharge Notice of *Lis Pendens* with this court on April 13, 2020, which motion was granted by Order of the court (Murphy, J.) dated April 28, 2020. Order on Defendants' Motion to Cancel Notice of *Lis Pendens*, *Slager v. Bell*, No. BCD-RE-2019-14, at *1-2 (Me. B.C.D. April 28, 2020). The Order was recorded with the York County Registry of Deeds on May 11, 2020. (Pl.'s Br. 2.) Underlying its order, the court confirmed that title for real estate is not at issue in this case. (Def.'s Br. 3.) Defendants subsequently filed their Slander of Title claim against Plaintiffs, alleging Plaintiffs' recording of the Notice was baseless and that their refusal to withdraw it until ordered to do so by this court injured the Defendants. (Def.'s Br. 3.) The Defendants' Slander of Title counterclaim survived Plaintiffs' motion to dismiss and persists as an issue before this court. *Slager v. Bell*, No. BCD-RE-2019-14, 2021 WL 3700682, at *8-10 (Me. B.C.D. July 15, 2021) (Order on Counterclaim-Defendant's Motion to Dismiss).

Slager was deposed by Defendants with regards to their Slander of Title claim on July 8, 2022. (Def.'s Br. 3.) When shown the Notice and asked questions about it, Slager testified that

2

he "relied on counsel," and that he had no knowledge on the topic outside of his communications with his attorney. (Def.'s Br. 4.) He also testified that he understood what his attorney told him, and that for him to answer whether he was aware that the Notice would be recorded before it was filed would require him to disclose communications with that attorney. (Def.'s Br. 4.) When Defendants asked about Slager's communications with his former counsel about the Notice, counsel instructed Slager not to answer any such questions on the basis of attorney-client privilege. (Def.'s Br. 3-4.)

## DISCUSSION

Defendants assert Slager is not entitled to attorney-client privilege as to the communications he had with his former counsel with respect to the Notice because he waived it by answering that he relied on advice of counsel when approving the recording of the Notice.

The "Lawyer-Client" privilege protects against disclosure of the contents of any confidential communication between the client and their lawyer. Me. R. Evid. 502(b). This privilege is not absolute; the attorney-client privilege is subject to numerous statutory exceptions. *See* Me. R. Evid. 502(d). Additionally, a person entitled to the privilege may waive it by voluntarily disclosing or consenting to the disclosure of any significant part of a privileged matter. Me. R. Evid. 510(a).

"The proposition that a privilege is waived by voluntary disclosure is universally recognized." *Jensen v. S.D. Warren Co.*, 2009 ME 35, ¶ 31, 968 A.2d 528 (quoting Field & Murray, *Maine Evidence* § 510 at 252 (6th ed. 2007)). Voluntary disclosure occurs "when a significant part or key element of the privileged communication has been disclosed by the party claiming entitlement to the privilege." *Id.* Waiver by voluntary disclosure may be express or implied. *See In re Keeper of the Records (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348

3

F.3d 16, 22 (1st Cir. 2003). This common law "exception[]" to attorney-client privilege is "based on considerations of forensic fairness." *Jensen*, 2009 ME 35, ¶ 31, 968 A.2d 528 (quoting Restatement (Third) of the Law Governing Lawyers § 80 (Am. Law Inst. 2000)); *see In re Keeper of the Records*, 348 F.3d at 23-24; *Brauner v. Valley*, 187 N.E.3d 349, 448-49 (Mass. App. Ct. 2022) ("the attorney-client privilege cannot be both a shield and a sword") (citation omitted).

Applying these principles, courts find that "an implied waiver occurs when the party asserting the privilege places protected information at issue for personal benefit through some affirmative act, and to protect against disclosure of that information would be unfair to the opposing party." *Metropolitan Prop. and Cas. Ins. Co. v. Savin Hill Fam. Chiropractic, Inc.*, Civil Action No. 15-12939-LTS, 2019 WL 13180456, at *2 (D. Mass. Mar. 15, 2019) (citing *In re Keeper of the Records*, 348 F.3d at 24). Thus, a party otherwise entitled to privilege impliedly waives it through their own affirmative conduct when: 1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; 2) through this affirmative act, the asserting party put the protected information in issue by making it relevant to the case; and 3) application of the privilege would deny the opposing party access to information vital to their case. *Id.*; *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975).

The "paradigmatic example" of an implied waiver of attorney-client privilege is a client's assertion of their reliance on advice of counsel as a defense to discovery. *In re Keeper of the Records*, 348 F.3d at 24. "When such a defense is raised, the pleader puts the nature of its lawyer's advice squarely in issue, and, thus, communications embodying the subject matter of the advice typically lose protection." *Id.* As observed by the First Circuit, were the law otherwise a client could selectively disclose only information helpful to their cause, withhold

4

other information unhelpful or prejudicial to it, and in that way "kidnap the truth-seeking process." *Id.* The Law Court also recognizes that no client should "be allowed to state [their] reliance on his or her lawyer's advice and then assert the client's privilege . . . [as to] the advice actually given." *Jensen*, 2009 ME 35, ¶ 32, 968 A.2d 528 (quoting Field & Murray, *Maine Evidence* § 510.1 at 253). This is because it would be "unjust" to permit a client to waive the privilege by asserting their reliance on advice of counsel but preclude discovery of the substance of that advice. *See Estate of McCormick*, 2001 ME 24, ¶ 33, 765 A.2d 552.

Finding an implied waiver of attorney-client privilege is a case-specific analysis that requires a careful weighing of facts. *See U.S. v. Desir*, 273 F.3d 39, 45-46 (1st Cir. 2001). The party asserting attorney-client privilege has the initial burden to demonstrate its applicability. *Harris Mgmt., Inc. v. Coulombe*, 2016 ME 166, ¶ 24, 151 A.3d 7; *Poor v. Lindell*, No. BCD-CV-2018-27, 2022 WL 1539584, at *2 (Me. B.C.D. May 12, 2022). A party seeking to show that an exception applies has the burden of proving, by a preponderance of the evidence, that the elements requisite for the exception exist. *Harris Mgmt., Inc.*, 2016 ME 166, ¶ 24, 151 A.3d 7.

To prove their Slander of Title claim, Defendants must, in part, establish that the Notice was filed with "malice or . . . with reckless disregard of its falsity." *Harvey v. Furrow*, 2014 ME 149, ¶ 25, 107 A.3d 604. Malice and reckless disregard of falsity are purely subjective elements. *Lester v. Powers*, 596 A.2d 65, 71 (Me. 1991). An attorney's advice to their client may inform, and bear upon, the client's state of mind with respect to the client's own conduct. *See U.S. v. Kinsella*, 545 F.Supp.2d 148, 156 (D. Me. Apr. 8, 2008). This is especially the case when the client's state of mind with respect to their conduct is the "central focus" of a claim or defense. *Id.*[1]

---

[1] The problem with a Slander of Title claim regarding a *lis pendens* is that the parties litigate over one another's litigation tactics and decisions. Generally, privileges attach to prevent these disputes. It is often the case that a party

5

*A. Slager's contention that he relied on advice of counsel when he filed the Notice was Slager's affirmative act.*

Slager argues that his testimony that he relied on counsel is not akin to an affirmative defense, and that Defendants seek to use his communications with his former counsel to satisfy their own affirmative burden to demonstrate that the Notice was recorded with malice or reckless disregard of its falsity. (Pl.'s Br. 4.) Defendants argue Slager took several affirmative steps: 1) he testified that he "relied on counsel" when asked about the Notice during Defendants' deposition; 2) Plaintiffs' use of the catchall affirmative defense ("each and every . . . affirmative defense available . . . under Maine law"); and 3) lack of any indication by Plaintiffs that they are not invoking an advice of counsel defense. (Def.'s Br. 6-7.)

Plaintiffs, not Defendants, caused the Notice to be recorded. (Def.'s Br. 2-3; Pl.'s Br. 2.) Slager asserted his entitlement to attorney-client privilege when deposed about his knowledge of the Notice and its recordation. (Def.'s Br. 4.) In essence, Slager's assertion of privilege was in aid of his contention that the Notice was not filed with malice or reckless disregard of its falsity. *See In re Keeper of the Records*, 348 F.3d at 24; *Heitzenrater v. OfficeMax, Inc.*, No. 12-CV-900S(F), 2015 WL 10987110, *1 (W.D.N.Y. June 22, 2015) (holding that a party's reliance on privileged advice from counsel to make their claim or defense provides grounds for an implied waiver claim). Slager's assertion that he was relying on advice of counsel when he filed the Notice was an affirmative act.

---

will simply rely on their attorney to determine when to file a Notice of *Lis Pendens*. An attorney has to be careful not to omit a tactic that might be available to them depending on how the court rules in an area that has not been addressed by the Law Court. At this of the case the court already decided the Slander of Title claim will go forward. *Slager v. Bell*, No. BCD-RE-2019-14, 2021 WL 3700682, at *8-10 (Me. B.C.D. July 15, 2021) (Order on Counterclaim-Defendant's Motion to Dismiss). Therefore, the court cannot limit the Defendants' discovery rights on their counterclaim.

*B. Slager's reliance on advice of counsel put the attorney communications at issue.*

Slager's responses to Defendants' questions during deposition placed his former counsel's advice with respect to the Notice and its recordation squarely in issue. Slager offered that he relied on the advice of his former counsel when shown the Notice and asked questions about it. (Def.'s Br. 2-3.) He also testified that he had no knowledge of the topic beyond his communications with his former counsel. (Def.'s Br. 3.) Plaintiffs' state of mind is an element Defendants' must prove to prevail in their Slander of Title counterclaim. *See Harvey*, 2014 ME at ¶ 25, 107 A.3d 604. By submitting his reliance on advice of counsel when filing the Notice, Slager placed his communications with former counsel about the Notice at issue. *See Kinsella*, 545 F.Supp.2d at 156. Without learning about the substance of those communications, Defendants cannot prove that Slager acted with malice or reckless disregard of falsity when they filed the Notice.

*C. Preservation of the privilege asserted by Slager would deny Defendants discovery of information vital to their case.*

Plaintiffs contends that, through past briefing, former counsel explained the purpose for filing the Notice, and therefore that other means are available for Defendants to discover whether the Notice was filed with malice or reckless disregard of its falsity. (Def.'s Br. 9.) Principally, Plaintiffs asserts that Defendants can adequately discover the information they seek about Slager's state of mind as regards the Notice in the Objections of Plaintiff to Defendants' Motion to Cancel *Lis Pendens* dated April 16, 2020. (Def.'s Br. 9.) But neither parties' discovery of any disputed material facts should be limited to the other's averments in the record. Moreover, the allegations contained in the pleadings were not given under oath. *See Farrell v. Theriault*, 464 A.2d 188, 193 (Me. 1983).

7

Further, Slager's responses to Defendants' questioning during their deposition of him support Defendants' claim that upholding privilege under these circumstances would deny them information vital to their case. During the deposition, Defendants questioned Slager about what a *lis pendens* certificate is and does. (Pl.'s Br. 3.) In response to these questions, Slager testified that he had no such knowledge that did not come from communications with counsel. (Pl.'s Br. 3.) He did not undertake to learn about what a *lis pendens* is or does himself, for example by personally researching the topic. (Pl.'s Br. 3.) Instead, Slager confirmed that he relied on counsel. (Pl.'s Br. 3.) Implicitly, Slager's only knowledge about what a *lis pendens* is and does came from his communications with counsel. As these communications are the "only" source of Slager's knowledge on the topics at issue, Defendants cannot discover the true extent of his knowledge through other sources.

*D. Narrow scope of waiver and renewed deposition questioning.*

Slager impliedly waived attorney-client privilege only as to his communications with his former counsel regarding the Notice and its recordation. In the event of a dispute, the court will interpret a waiver of privilege narrowly. Such waivers extend only to communications relevant to the issue asserted by the client. *Jensen*, 2009 ME 35, ¶ 33, 968 A.2d 528 (quoting Restatement (Third) of The Law Governing Lawyers § 80 (2000)). During renewed deposition, Defendants are permitted only to ask Slager what he learned during his conversation about the Notice with his former counsel. In the event Defendants find it necessary to depose Plaintiffs' former counsel, Attorney David Lourie, the scope of that deposition must also be strictly limited to inquiry about Attorney Lourie's communications with Slager about the Notice. Finally, any documents discovered should be redacted to preserve Plaintiffs' privilege as to all other matters.

8

## CONCLUSION

For the reasons set forth above, Defendants' requests that 1) they be permitted to reconvene the deposition of Plaintiff/Counterclaim-Defendant Randy Slager, 2) that he be ordered to answer questions about his communications with counsel concerning the Notice, and 3) that Defendants be permitted to depose Attorney David Lourie (and/or other counsel with whom Plaintiffs testify they communicated concerning the Notice) about the Notice and without the imposition of attorney-client privilege are GRANTED. The renewed deposition and any deposition of Attorney Lourie or other counsel with whom Slager testifies he communicated concerning the Notice must be narrowly limited to what is strictly necessary to probe whether the Notice was made with the Plaintiffs' knowledge or reckless disregard of its falsity.

The entry is:

Defendant's request for limited discovery of attorney client communications is granted. The discovery is specifically limited to attorney client communications regarding the recording of the lis pendens up to the date of the court's order dissolving the lis pendens.

This Order is incorporated on the docket by reference pursuant to M.R.Civ.P. 79(a).

Dated: _9/1/22_ 

_____
Thomas R. McKeon
Justice, Maine Business & Consumer Court

Entered on the docket: 09/01/2022

9

**RANDY SLAGER**
  *Plaintiff(s)*
   **v.**

**LORI L. BELL and**
**JOHN W. SCANNELL**
  *Defendant(s)*


*Randy Slager*        **Alan R. Atkins, Esq.**
               **Fulton Rice, Esq.**
               **Andrew Sparks, Esq.**
               **William Kennedy, Esq.**
               100 Commercial St, Suite 305
               Portland, ME 04101


*Lori L. Bell*        **Daniel L. Rosenthal, Esq.**
*John W. Scannell*     **Jennie Clegg, Esq.**
               **Trey Milam, Esq.**
               16 Middle Street, Unit 501
               Portland, ME 04101

STATE OF MAINE                                  BUSINESS AND CONSUMER COURT

CUMBERLAND, ss                                  BCD-RE-2019-14


RANDY SLAGER,

    Plaintiff



v.                                              **COMBINED ORDER ON MOTION FOR**

                                                **RECONSIDERATION AND MOTION FOR**

                                                **INSPECTION**

LORI BELL and

JOHN SCANELL,

    Defendants



      Before the Court are motions brought by Plaintiff and Defendants.[1]  The Court deferred action on

two of these motions for reasons stated in two Orders issued November 1, 2021.  In one of the orders, the

Court stated that it would wait until the Law Court issued its decision on Plaintiff's appeal of the York

County Superior Court's decision to dismiss his Rule 80B complaint with prejudice.  On November 2,

2021 the Law Court issued its decision in *Slager v. Bell,* 2021 ME 52, __ A.3d __.  The Law Court

---

[1] In addition to the two motions identified in the caption to this Combined Order, on March 22, 2021 Plaintiff filed a
Motion for Leave to File Supplemental Affidavit in Support of Motion to Conduct Discovery and on April 5, 2021
filed a Motion for Leave to File Supplement to Plaintiff's Motion to Conduct Discovery. Both these motions are
denied as the Court previously permitted Plaintiff to renew its Motion for Inspection, which was fully briefed and
has now been addressed in this Order. Defendant's Motion for Sanctions, which was embedded in their Opposition
to Plaintiff's Motion for Leave to File Supplement to Plaintiff's Motion to Conduct Discovery, is denied as well.
Both parties have filed multiple motions in this contentious litigation. However, the conduct complained of does not
approach the kind of conduct that would justify imposition of any sanction, and the request for sanctions is denied.

reversed the decision of the York County Superior Court, and the dismissal of the Rule 80B complaint is now without prejudice. The Court will address Defendants' Motion for Reconsideration first.

In their Motion, Defendants argued among other things that because the dismissal of the appeal had been made "with prejudice," the dismissal "should have been treated like the dismissal with prejudice of any other case." Defendants' Motion for Reconsideration at 3. Defendants argued in both their Motion for Summary Judgment and Motion for Reconsideration that "a valid final judgment was entered in the prior action," and that the dismissal with prejudice satisfied that element of claim preclusion. *Cutting v. Down E. Orthopedic Assoc., P.A.*, 2021 ME 1, ¶ 10, 244 A.3d 226.

As a result of the Law Court's decision, the Defendants can no longer satisfy that element. While the Court had rejected Defendants' claim preclusion argument in its Summary Judgment Order for other reasons, Defendants recognized in their Motion for Reconsideration that their "Motion for Summary Judgment on claim preclusion grounds was based primarily on the York County Superior Court's dismissal with prejudice of Plaintiff's Rule 80B appeal…. Defendant's claim preclusion argument was *not* based primarily on the CEO's decision underlying that appeal." Defendants' Motion for Reconsideration at 2. The Court therefore denies the Motion for Reconsideration brought by Defendants.

With respect to Plaintiff's Renewed Motion for Inspection, the Court has once again reviewed the previous orders issued on this request, the first issued on July 9, 2020 and the second on February 5, 2021, after the stay of these proceedings were lifted. The Court concludes that Plaintiff's argument is undercut by two considerations. First, while this dispute has been pending, more than one winter has come and gone. There is absolutely no evidence that the wall in question has failed to perform, or shown any signs that it is no longer plumb, level, or under distress. In addition, in Plaintiff's own assertions on page 4 of his Reply to Defendants' Opposition, Plaintiff points to his "convincing and irrefutable evidence that the existing footing of wall A11 does not bear on ledge and therefore the integrity of the wall is deficient." He also points to the lack of any structural design for the wall, the lack of a review of

the interior wall design by a licensed professional engineer, and other evidence that he claims will bolster his claim should the case proceed to trial.

Under these circumstances, the Court cannot find that there is any need for the invasive testing that is being proposed. While the current proposal is less invasive than the one previously made, it is nevertheless invasive. And on balance, the Court concludes that the current proposal is not reasonable or necessary to proving Plaintiff's case. The Court will therefore deny the Plaintiff's renewed Motion for Inspection.

The entry will be: The Defendants' Motion for Reconsideration is DENIED. Plaintiff's renewed Motion for Inspection is DENIED. Defendants' Motion for Sanctions is DENIED. Plaintiff's Motion for Leave to File Supplemental Affidavit in Support of Motion to Conduct Discovery and Motion for Leave to File Supplement to Plaintiff's Motion to Conduct Discovery are both DENIED. The Clerk may note this Combined Order on the docket by reference pursuant to Rule 79(a) of the Maine Rules of Civil Procedure.

12/13/2021
_____
**DATE**

_____
**M. Michaela Murphy**
**SUPERIOR COURT JUSTICE**

Entered on the docket: 12/13/2021

STATE OF MAINE                           BUSINESS AND CONSUMER COURT
CUMBERLAND, ss.                          Location: Portland
                                         DKT. NO. BCDWB-RE-2019-14

RANDY SLAGER,                      )
                                  )
    Plaintiff/Counterclaim-Defendant,   )
                                  )
v.                                )       **ORDER ON DEFENDANTS'**
                                  )       **MOTION FOR**
                                  )       **SUMMARY JUDGMENT**
LORI L. BELL and JOHN W.          )
SCANNELL,                         )
                                  )
    Defendants/Counterclaim-Plaintiffs.  )

This case involves a dispute between neighbors in Kennebunkport (the "Town") over the construction of a retaining wall on Defendants Lori Bell and John Scannell's property close to the boundary line between the properties. Defendants move for summary judgment on Plaintiff Randy Slager's nuisance claim contained in his amended complaint on the basis that the claim is barred by claim preclusion, issue preclusion, and a failure to exhaust administrative remedies.[1] Plaintiff filed a Rule 56(f) motion to conduct additional discovery to respond to Defendants' motion. The Court denied the Rule 56(f) because Plaintiff failed to explain "how the emergent facts, if adduced, will influence" whether his nuisance claim is barred by preclusion or a failure to exhaust administrative remedies. *Bay View Bank, N.A. v. Highland Golf Mortgagees Realty Tr.*, 2002 ME 178, ¶ 22, 814 A.2d 449. Following this, the Court held oral argument on August 10, 2021. After reviewing the parties' legal memoranda, the statements of material fact and supporting record material, and considering the parties' oral arguments, the Court issues the following decision.

---

[1] Plaintiff's amended complaint also contains a claim for trespass that survived Defendants' motion to dismiss. (*See* Order on Mot. Dismiss (Mar. 9, 2020).) Defendants' motion for summary judgment does not address the trespass claim.

1

## LEGAL STANDARD

Summary judgment is granted to a moving party where "there is no genuine issue as to any material fact" and the moving party "is entitled to judgment as a matter of law." M.R. Civ. P. 56(c). "A material fact is one that can affect the outcome of the case, and there is a genuine issue when there is sufficient evidence for a fact-finder to choose between competing versions of the fact." *Lougee Conservancy v. CitiMortgage, Inc.*, 2012 ME 103, ¶ 11, 48 A.3d 774 (quotation marks omitted). When reviewing the record on a motion for summary judgment, a court views the facts in the light most favorable to the non-moving party. *See Cormier v. Genesis Healthcare LLC*, 2015 ME 161, ¶ 7, 129 A.3d 944. "Any doubt on this score will be resolved against the movant, and the opposing party will be given the benefit of any inferences which might reasonably be drawn from the evidence." 3 Harvey, *Maine Civil Practice* § 56:5 at 240 (3d, 2011 ed.).

## SUMMARY JUDGMENT RECORD

Though the parties' Rule 56(h) filings contain many qualifications and objections, the key historical facts underlying this case are not truly in dispute.[2] The following is a recitation of those facts.

On December 4, 2018, the Town issued a permit to Defendants to construct the retaining

---

[2] The Court overrules many of the objections to the relevance of the history of the case. Such facts are relevant to the res judicata and exhaustion of remedies issues raised by Defendants in their motion. The Court also overrules objections asserting a violation of the one-fact-per-statement rule because it does not intend to decide this motion on such purely technical grounds. However, it is not overlooking more substantive noncompliance with Rule 56(h). In many instances, without record citations denied portions of statements "to the extent they are inconsistent with" whatever document was at issue in the statement. It is the parties' obligation to provide specific record citations to enable the Court to identify the ostensible inconsistencies: "The opposing statement shall admit, deny or qualify the facts asserted by reference to each numbered paragraph of the moving party's statement of material facts and *unless a fact is admitted, shall support each denial or qualification by a record citation as required by this rule*." M.R. Civ. P. 56(h)(2) (emphasis added); *see also id.* 56(h)(4) ("Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted."). To the extent the parties' statements of material fact veer toward argument or editorialization, the Court has attempted to exclude such characterizations because Rule 56(h) statements are not intended for such purposes.

walls at issue in this case. On August 1, 2019, 240 days after the permit was issued, Plaintiff appealed to the Town's Zoning Board of Appeals (the "ZBA"). Plaintiff contended that the permit was improperly issued because the retaining wall Defendants had built along the parties' shared boundary line, and the patio atop the wall that Defendants planned to build, constituted an impermissible "structure" within the fifteen-foot setback. Plaintiff argued that "[t]he walls of Ms. Bell's patio are not reinforced with rebar nor engineered to be anything other than a fence with air on both sides," and that he had "safety concerns about the structural sufficiency of Ms. Bell's patio and the height of her patio walls." Thus, Plaintiff argued, the Town had violated its own Ordinance by issuing the permit and Defendants had violated the permit. Plaintiff further contended "that the work on the subject property has created a safety problem for Mr. Slager's residence . . . ." Acknowledging that his appeal was untimely and that he needed "good cause" to avoid his appeal being dismissed as such, Plaintiff contended that the safety concerns "should give the Board good cause to hear Mr. Slager's appeal on the merits."

On September 24, 2019, the ZBA held a hearing on Plaintiff's appeal. Plaintiff brought an architect to the hearing to argue on his behalf about the ostensible safety issues with the walls. On October 1, 2019, the ZBA dismissed Plaintiff's appeal as untimely and lacking in "good cause" for the untimeliness and concluded that the ostensible safety issues Plaintiff raised were outside the ZBA's jurisdiction. Plaintiff did not appeal to the Maine Superior Court from the ZBA's denial of his appeal.

On July 17, 2019, the Town's Assistant Code Enforcement Officer ("CEO") wrote to Defendants regarding suspension of their permit. The Assistant CEO asserted differences between work as done and as permitted, including that "Wall section A11 was not constructed as per submitted plan," and that "Wall section A2 and A1 do not match submitted engineered drawing

3

dimensions." The Assistant CEO identified these issues as implicating Article 11.5(A)(3) of the Ordinance, which states: "A permit may be suspended or revoked, if: . . . (3) "[t]he continuation of the work authorized is endangering or may endanger the safety or general welfare of the community during the construction or work for which the permit was issued." The Assistant CEO stated that "[c]orrective actions will be . . .[v]erification by licensed professional engineer confirming wall sections A1 and A2 match submitted drawings [and] Wall section A11 needs to be reviewed structurally for potential failure due to the amount of uneven back fill."

On August 19, 2019, Plaintiff, through counsel, wrote to the Town's CEO expressing "grave concerns" and "substantial safety concerns" about the walls and demanding that the Town commission "3rd party destructive forensic structural evaluation" to address the "danger" posed by the walls. On August 22, the CEO notified Defendants that they had satisfactorily addressed the issues in the July 17 letter, except that the Town requested "an extensive review of the structural integrity and ability to continually support the current and proposed backfill on wall section A11 . . . by a licensed structural engineer." The suspension of work related to that wall remained in effect. On the same day, Plaintiff's counsel wrote to the CEO again, reiterating his "safety concerns" among other things.

On September 11, Plaintiff's counsel wrote to the CEO again. He reiterated that "Ms. Bell's elevated patio and wall section A11 pose an imminent threat to Mr. Slager's home and his family." He contended that the wall was not properly built and lacked structural support to keep it from collapsing and contended that it was a nuisance. He also directed the CEO's attention to 17 M.R.S.A. § 2851, *et seq.*, Maine's "dangerous building" statute. On September 24, 2019, in response to the CEO's August 22 letter, two licensed engineers reported that Wall A11 was in excellent condition with no signs of instability or distress and had been in place for approximately

4

seven months; its footing was pinned to ledge; its foundation bore on ledge; and that it appeared to be adequately constructed. The letters from the engineers were forwarded to the CEO and Plaintiff's counsel.

On or about October 31, 2019, Plaintiff filed his original Complaint in this case. Plaintiff alleged that he was concerned that Wall A11 (the "raised patio's retaining walls") was not built properly and that he was afraid it would collapse. Plaintiff alleged that he "reported his safety concerns to the Town," and that in late June 2019, he "again contacted the Town's code enforcement office to voice his concerns that Defendants' construction of a raised patio put his home in jeopardy given the proximity of the raised patio and lack of any plans and other documents supporting the raised patio's structural sufficiency." Plaintiff referenced and described the Town's July 17, 2019 correspondence described above, alleging that "[t]he corrective actions which were ordered by the Town to be taken by Defendants are to assure that the raised patio and retaining walls are safely constructed." Plaintiff also referenced and described the August 22, 2019 correspondence referenced above, as well as Plaintiff's ZBA appeal. Plaintiff alleged that his use and enjoyment of his property, and the value of that property, have been diminished by what "appears" to Plaintiff to be a safety threat based on "potentially" defective construction. His fears are based on his post-construction visual observations of Defendants' retaining walls, "to the extent possible," as well as the fact that he has not seen engineering documentation satisfying him that Wall Section A11 is safe.

On December 3, 2019, following additional correspondence, the CEO determined that Defendants had satisfied his concerns regarding Wall A11 (and all other matters) and informed Defendants that they could proceed with their work. Plaintiff was not provided a copy of the Town CEO's December 3, 2019 email but instead learned of it when his counsel visited the CEO's office

5

to examine the Town's file regarding Defendants' permits. A few weeks later, Plaintiff's counsel mailed the CEO a cover letter enclosing a report prepared by licensed structural engineer David Price of Price Structural Engineers, Inc. (the "Price Report"). Then, on or about December 23, 2019, Plaintiff filed his amended complaint in this Court. The amended complaint repeated the allegations in the original complaint and attached a copy of the Price Report, describing it as "a report of his findings and conclusions with respect to the safety and construction [sic] Defendants' raised patio and retaining walls." The Price Report alleged building code violations and structural safety concerns regarding the retaining walls and was referenced as a basis for alleging that "the raised patio and retaining walls . . . [are] unsafe."

On December 27, 2019, Plaintiff appealed the CEO's December 3 lifting of the stop-work order to the ZBA, contending that the CEO had failed to provide required certifications for his December 3 action under section 11.5.C of the Ordinance. On January 15, 2020, the CEO acknowledged the appeal and noted that he intended to review both sides' engineering reports and produce a formal position in writing on whether the suspension of Defendants' permits should be lifted. On January 23, 2020, Defendants' engineer, Thad Gabryszewski, P.E., S.E., responded to the Price Report, noting that it did not change his previously-expressed opinion. Mr. Gabryszewski stated that Wall A11 continued to show no signs of distress following further freeze-thaw cycles and cited a number of sources in opposition the Price Report's assertion that the wall was not built on ledge.

On January 31, 2020, the CEO requested additional information, advised the parties that he had retained an independent engineer, and stated that he would issue a decision on whether the suspension of work under the permits would remain in effect no later than February 28, 2020. On February 5, 2020, Mr. Gabryszewski responded, noting that "[t]hree engineering firms have

6

offered sound Opinions that counter the speculations of the Price Report and conclude that the walls are sound." Mr. Gabryszewski noted further that "[t]he Opinions are based on calculations, observations of in-progress construction, and evidence of performance." Mr. Gabryszewski then went on to compile and summarize in detail the bases for the engineers' opinions, addressing the CEO's concerns and concluding that: (1) walls A1 and A2 were designed to resist soil pressure by their weight and size and that their weight and size as built were consistent with their design; (2) wall A11 has been retaining soil for over a year through one and a half winters, showing no signs of distress despite numerous frosts, that it is pinned to ledge, that it bears on ledge and is protected from frost heaves, and is sufficiently reinforced to resist Code-required loads. Mr. Gabryszewski explained further that three test holes had been dug that very day at the base of the wall, and that "[a]ll three found ledge, and found the wall's foundation bears on ledge."

Mr. Price responded further on February 19, 2020, effectively contending that because all conceivable doubt as to the safety of the walls had not been removed, the walls should be taken apart and inspected. Mr. Gabryszewski replied on February 27, 2020, asserting that there were no reasonable grounds to believe that the retaining walls presented any safety threats in the short or long term and summarizing the evidence that wall A11 bears on ledge.

On February 28, 2020, Plaintiff's counsel sent an email to the CEO providing a copy of a draft letter from Mr. Price responding to Mr. Gabryszewski's February 27 letter. Also on February 28, 2020, the CEO wrote to Defendants, copying Plaintiff's counsel, and noting his receipt of, among other items, the August 19, 2019 letter from Plaintiff's counsel (which attached a letter from an architect); the September 24, 2019 McCullough and Gabryszewski letters; the December 17, 2019 Price Report; the February 5, 2020 Gabryszewski letter; and the February 19, 2020 Price letter. The CEO addressed each of the suspended items of work under the permit and, as to each,

7

summarized the information that had been provided to him. The CEO found that licensed professional engineers had demonstrated that Walls A1 and A2 were built according to an approved alternate design, and that Mr. Price had cited the wrong building code standards. As to Wall A11, the CEO noted that he had earlier found that "Wall section A11 needs to be reviewed structurally for potential failure due to the amount of uneven back fill," and that this "corrective action" would satisfy the safety-related basis for the suspension. The CEO noted that as of February 28, "[p]hotographic evidence provided indicates footings on ledge, as well as the presence of rebar within CMU cores," and concluded that "Mr. Gabryszewski's follow up documentation on February 5th, 2020 reasonably addresses the concerns raised regarding fill placement. Further site review and photographic evidence supplied by Mr. Gabryszewski supplements the already existing evidence confirming the presence of ledge beneath the wall footings. This reasonably confirms that additional frost protection is not needed." Thus, the CEO found that the requested "corrective action" had been taken and he lifted the suspension of the permits. On or about March 24, 2020, Plaintiff appealed the CEO's February 28 decision to the York County Superior Court under Rule of Civil Procedure 80B.[3]

On March 9, 2020, this Court entered an order denying Defendants' motion to dismiss Plaintiff's nuisance claim. In its March 9 order, the Court cited portions of the amended complaint that cited the Price Report for the propositions "that the construction was done in violation of building codes, that the retaining walls are not 'bearing on ledge'—meaning they are subject to 'frost heaves and overturning' and hence unsafe," and that "the retaining walls are unstable and were constructed without full-width capstones or through-stones which present safety concerns."

On March 25, 2020, Plaintiff appealed the CEO's February 28 decision to the ZBA. On

---

[3] Throughout the process culminating in the CEO's Decision, Plaintiff was not afforded a hearing with or before the CEO.

June 8, 2020, the ZBA held a hearing to decide whether it had jurisdiction over Plaintiff's appeal. At the conclusion of the June 8 hearing, the ZBA determined that it did not have jurisdiction over Plaintiff's appeal. On or about June 22, 2020, Plaintiff filed a motion in the York County Superior Court for leave to supplement his appeal, seeking to add an appeal of the ZBA's June 8, 2020 decision.

On July 9, 2020, this Court granted Defendants' motion to stay. The Court found that "[t]he overlap between at least the nuisance claim and the safety and code violations alleged before the Town is so significant as to be almost complete." The Court also noted the "likelihood that the Plaintiff could obtain much if not all of the relief he seeks should he prevail in the administrative proceedings before the Town and the York County Superior Court." On July 29, 2020, Plaintiff withdrew his motion for leave to supplement. On or about September 30, 2020, Plaintiff filed with the York County Superior Court a Notice of Dismissal of his appeal. On January 20, 2021, the York County Superior Court entered an order specifying that the dismissal of Plaintiff's appeal was with prejudice. Plaintiff sought reconsideration of the dismissal with prejudice but was denied.

## ANALYSIS

1. Claim preclusion and issue preclusion.

Defendants argue that both claim preclusion and issue preclusion bar Plaintiff from maintaining his nuisance claim against Defendants. "The doctrine of *res judicata* is a court-made collection of rules designed to ensure that the same matter will not be litigated more than once" and it has "two separate components, issue preclusion and claim preclusion." *Machias Sav. Bank v. Ramsdell*, 1997 ME 20, ¶ 11, 689 A.2d 595 (citation and quotation marks omitted). It "applies to decisions made by municipal bodies as well as to judgments issued by the court." *Town of*

9

*Mount Vernon v. Landherr*, 2018 ME 105, ¶ 15, 190 A.3d 249.

Claim preclusion "bars relitigation if: (1) the same parties or their privies are involved in both actions; (2) a valid final judgment was entered in the prior action; and (3) the matters presented for decision in the second action were, or might have been litigated in the first action." *Cutting v. Down E. Orthopedic Assocs., P.A.*, 2021 ME 1, ¶ 10, 244 A.3d 226 (quotation marks omitted). The Law Court uses the "transactional test" for determining whether the "matters" are the same, which requires courts to

> examin[e] the aggregate of connected operative facts that can be handled together conveniently for purposes of trial to determine if they were founded upon the same transaction, arose out of the same nucleus of operative facts, and sought redress for essentially the same basic wrong. In such circumstances, the newly pleaded claim is precluded even if the latest suit relies on a legal theory not advanced in the first case, seeks different relief than that sought in the first case, or involves evidence different from the evidence relevant to the first case. Claim preclusion does not, however, apply when a court reserves a party's right to maintain a second action, as happens when a court dismisses a claim without prejudice.

*Id.* Issue preclusion, also known as "collateral estoppel," "is focused on factual issues, not claims, and asks whether a party had a fair opportunity and incentive in an earlier proceeding to present the same issue or issues it wishes to litigate again in a subsequent proceeding." *Macomber v. Macquinn-Tweedie*, 2003 ME 121, ¶ 22, 834 A.2d 131. "An issue of law or fact litigated and decided in a valid, final judgment is conclusive in a subsequent legal proceeding between the same parties." *Landherr*, 2018 ME 105, ¶ 15, 190 A.3d 249.

As it pertains to claim preclusion, Defendants argue that the first element is met because Plaintiff and Defendants were parties to the 80B appeal that stemmed from the CEO's decision to lift the suspension of the permits. The second element is satisfied, Defendants argue, because the

10

York County Superior Court dismissed the pertinent 80B appeal with prejudice.[4]  On the third element, Defendants contend that the same transaction and nucleus of operative facts are at issue because both the nuisance claim here and the 80B appeal from the CEO's lifting of the suspension of the permits directly regard the construction of the retaining walls, their safety, and their status under permits and the Town's ordinance and building code.  The redress being sought is the same (an end to the construction of the wall).

Regarding issue preclusion, Defendants assert that the identical factual issues were decided by the CEO (and then abandoned on the 80B) appeal, those factual issues being Defendants' compliance with permits, the ordinance, and the building codes.  There was a final judgment because the 80B appeal was dismissed with prejudice.  Finally, Defendants contend, Plaintiff had every opportunity and incentive to litigate the issue at the Town level and, in fact, did so extensively (by providing Mr. Price's opinions and Report) and successfully (for a period when he secured a suspension of the permits).

For Plaintiff's part, his only argument in opposition to Defendants' claim preclusion argument is that he could not have brought his nuisance claim against Defendants as part of the 80B proceeding.  The Court agrees with Plaintiff that a nuisance claim against Defendants would not have been proper under Rule 80B(i) as a private civil claim against third parties would not have been a claim seeking "relief from governmental action . . . ."  *See* M.R. Civ. P. 80B(i) (emphasis added) ("If a claim for review of governmental action is joined with a claim *alleging an independent basis for relief from governmental action*, the complaint shall contain a separate count

[4] From reading the York County Superior Court's handwritten decision dismissing the 80B appeal with prejudice, it appears implicit to this Court that the Justice in that case dismissed the appeal with prejudice as a sanction: "[T]he number of motions and pleadings and the associated costs warrant a dismissal with prejudice." (Rosenthal Aff. Ex. 28.)  The Law Court has permitted dismissals with prejudice as a sanction to constitute an adjudication on the merits for purposes of *res judicata*.  *E.g.*, *Fannie Mae v. Deschaine*, 2017 ME 190, ¶ 17, 170 A.3d 230.

11

for each claim for relief asserted . . . .").  However, the question that requires answering under the transactional test is broader than whether the specific "claim" could have been brought.  *See Cutting*, 2021 ME 1, ¶ 10, 244 A.3d 226; *see also* 46 Am. Jur. 2d *Judgments* § 458 ("The present trend is to see a claim in factual terms and to make it coterminous with the transaction regardless of the number of substantive theories, or variant forms of relief flowing from those theories, that may be available to the plaintiff, regardless of the number of primary rights that may have been invaded, and regardless of the variations in the evidence needed to support the theories or rights.").  As it regards issue preclusion, Plaintiff contends that the process before the CEO (which culminated in the 80B appeal) did not contain the essential elements of adjudication.

Though Plaintiff only directed the "essential elements of adjudication" argument toward issue preclusion, the Court concludes that it is dispositive on both prongs of *res judicata* here.  It is noteworthy to highlight that the Restatement section – adopted by the Law Court[5] and from which the "essential elements of adjudication" consideration derives – clearly states that the scope of the consideration is applicable to both claim preclusion and issue preclusion.  *See Restatement (Second) of Judgments* § 83 cmt. a. ("The rule of this Section applies when a final adjudicative determination by an administrative tribunal is invoked as the basis of claim or issue preclusion in a subsequent action, whether that subsequent action is another proceeding in the same administrative tribunal or is a proceeding in some other administrative or judicial tribunal.").  Under section 83(2),

> An adjudicative determination by an administrative tribunal is conclusive under the rules of res judicata only insofar as the proceeding resulting in the determination entailed the essential elements of adjudication, including:
> (a)  Adequate notice to persons who are to be bound by the adjudication . . . ;

---

[5] *See N. Berwick v. Jones*, 534 A.2d 667, 670 (Me. 1987) (issue preclusion); *Maines v. Sec'y of State*, 493 A.2d 326, 329 (Me. 1985) (claim preclusion).

(b)     The right on behalf of a party to present evidence and legal argument in support of the party's contentions and fair opportunity to rebut evidence and argument by opposing parties;

(c)     A formulation of issues of law and fact in terms of the application of rules with respect to specified parties concerning a specific transaction, situation, or status, or a specific series thereof;

(d)     A rule of finality, specifying a point in the proceeding when presentations are terminated and a final decision is rendered; and

(e)     Such other procedural elements as may be necessary to constitute the proceeding a sufficient means of conclusively determining the matter in question, having regard for the magnitude and complexity of the matter in question, the urgency with which the matter must be resolved, and the opportunity of the parties to obtain evidence and formulate legal contentions.

*Id.* Though the process before the CEO undeniably contained much of the above, the Court concludes that it was of such an ad hoc nature that it cannot completely satisfy the essential elements of adjudication under consideration (e).[6] Most notably and persuasive to the Court, Plaintiff was not afforded an actual hearing in which the parties were all in one room (physical or in cyberspace) and at which Plaintiff and his counsel could more extensively probe the evidence offered in opposition to Plaintiff's position. The process before the CEO did not lack in documentation, but the Court cannot say it contained all the essential elements of adjudication such that Plaintiff's nuisance claim against Defendants is barred by *res judicata*.[7] The process before the CEO here lacked the type of formal hearing that occurred in *North Berwick v. Jones*:

> On August 25, 1982, Jones appeared, with counsel, before the Town's Planning Board to contest the notice and claimed that the Town was "without jurisdiction" to control his filling activities because no watercourse existed on the lot. Several witnesses made

---

[6] The Court is cognizant of the fact that it previously referenced the overlap between the nuisance claim here and the decision on appeal to the York County Superior Court in the 80B action. Per the considerations the Court must undertake to determine whether *res judicata* applies, the Court does not believe overlap does not automatically equates to the application of *res judicata*.

[7] If the process before the decisionmaker was insufficient for *res judicata* purposes, the 80B appeal cannot remedy this because the Superior Court would not have been deciding the issue anew. *See Fair Elections Portland, Inc. v. City of Portland*, 2021 ME 32, ¶ 20, 252 A.3d 504 (Superior Court and Law Court review is "for error of law, abuse of discretion or findings not supported by substantial evidence in the record.").

> presentations to the Board, including the Town's site evaluator, the Town's code enforcement officer, and a geologist hired by Jones. After argument by Jones's counsel, the Board tabled action on the question whether a watercourse existed on the lot until the next meeting to be held on September 8, 1982.

534 A.2d 667, 668 (Me. 1987).

The Court notes that it does not intend for this conclusion to be read to state that such a hearing at the municipal level is necessary in every case for *res judicata* to apply. In this case, though, the Court believes a more formal process before the Town was required for it to bear the essential elements of adjudication, particularly regarding such a hyper-technical issue requiring extensive expert input. Because of this, the Court denies Defendants' motion on the *res judicata* grounds.

2. Failure to exhaust administrative remedies.

Defendants also contend that Plaintiff's nuisance claim is barred by a failure to exhaust administrative remedies because Plaintiff abandoned his 80B appeal from the CEO's decision to lift the suspension of the permits. As the Law Court has described it,

> [t]he doctrine of exhaustion of administrative remedies requires a party who seeks an administrative remedy or who challenges an administrative action to pursue that remedy or challenge to a conclusion before the administrative agency prior to initiating action in the courts. [T]he rule is primarily designed to allow administrative agencies to correct their own errors, clarify their policies, and reconcile conflicts before resorting to judicial relief.

*Marshall v. Town of Dexter*, 2015 ME 135, ¶ 22, 125 A.3d 1141 (citations and quotation marks omitted). The Court does not find this doctrine to be applicable in these circumstances. This is not an instance like *Dexter* where the plaintiff received an adverse decision before the Town and then skipped an available municipal appeal to a governing board, resorting instead to filing a separate lawsuit against the Town in the Superior Court effectively seeking to overturn the

municipal decision. Here, though Plaintiff did not pursue to completion his 80B appeal of the CEO's decision to lift the suspension on the permits, his action against Defendants is not an action in which he is seeking to overturn the CEO's decision. Instead, he is seeking to obtain equitable and legal relief from his neighbors for what he alleges is tortious conduct. Had Plaintiff failed to appeal the CEO's decision to lift the suspension of the permits and instead filed a civil action in the Superior Court against the Town seeking a declaration that the permits were in violation of the Town's ordinance and relevant building codes, the Court would agree that Plaintiff failed to exhaust his administrative remedies. That is not the type of sequence that is at issue here, however. The Court denies Defendants' motion regarding failure to exhaust administrative remedies.

## CONCLUSION

As the Court has detailed above, neither *res judicata* nor a failure to exhaust administrative remedies bar Plaintiff's nuisance claim as a matter of law. Defendants' motion for summary judgment is therefore denied.

The entry is:

1. Defendants Lori Bell and John Scannell's motion for summary judgment is **DENIED**.
2. The Clerk is directed to incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated: 8/12/2021

_____
**Hon. M. Michaela Murphy**
**Justice, Maine Superior Court**

15

STATE OF MAINE                                    BUSINESS AND CONSUMER COURT
CUMBERLAND, ss.                                   Location: Portland
                                                  DKT. NO. BCDWB-RE-2019-14

RANDY SLAGER,                          )
                                       )
    Plaintiff/Counterclaim-Defendant,     )
                                       )
v.                                     )          **ORDER ON COUNTERCLAIM-**
                                       )          **DEFENDANT'S MOTION TO**
                                       )          **DISMISS**
LORI L. BELL and JOHN W.               )
SCANNELL,                              )
                                       )
    Defendants/Counterclaim-Plaintiffs.   )

This case revolves around a dispute between neighbors on Ocean Avenue in Kennebunkport (the "Town"). Lori Bell and John Scannell ("Counterclaim-Plaintiffs") filed counterclaims against Randy Slager ("Counterclaim-Defendant") on May 5, 2020.[1] Counterclaim-Defendant responded by filing a motion to dismiss the counterclaims pursuant to Maine Rule of Civil Procedure 12(b)(6). The Court held oral argument on the motion on June 2, 2021. After considering the allegations in the counterclaim, the parties' contentions in briefs and at oral argument, and the law on the various claims, the Court issues this decision.

## LEGAL STANDARD

"A motion to dismiss tests the legal sufficiency of the complaint, the material allegations of which must be taken as admitted . . . ." *Packgen, Inc. v. Bernstein, Shur, Sawyer & Nelson, P.A.*, 2019 ME 90, ¶ 16, 209 A.3d 116 (citations omitted). A complaint only needs to consist of a short and plain statement of the claim to provide fair notice of the cause of action. *Johnston v. Me. Energy Recovery Co., Ltd. P'ship*, 2010 ME 52, ¶ 16, 997 A.2d 741. When deciding a motion to

---

[1] The case was stayed from July 9, 2020, until approximately February 1, 2021, to allow for an administrative process to take its course.

1

dismiss pursuant to Rule 12(b)(6), the complaint is viewed "in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Ramsey v. Baxter Title Co.*, 2012 ME 113, ¶ 6, 54 A.3d 710 (quotation marks omitted). The Court does not adjudicate facts, "but rather there is an evaluation of the allegations in the complaint in relation to any cause of action that may reasonably be inferred from the complaint." *Saunders v. Tisher*, 2006 ME 94, ¶ 8, 902 A.2d 830.

While the Court must accept as true all well-pleaded factual allegations in the complaint, it is "not bound to accept the complaint's legal conclusions." *Bowen v. Eastman*, 645 A.2d 5, 6 (Me. 1994) (citing *Robinson v. Washington Cnty.*, 529 A.2d 1357, 1359 (Me. 1987)). "A dismissal is only proper when it appears beyond doubt that [the] plaintiff is entitled to no relief under any set of facts that [it] might prove in support of [its] claim." *Packgen*, 2019 ME 90, ¶ 16, 209 A.3d 116 (alterations in original).

## ALLEGATIONS[2]

Counterclaim-Plaintiffs are the owners of 200 Ocean Avenue in the Town while Counterclaim-Defendant is the owner of the neighboring 196 Ocean Avenue. (Countercl. ¶¶ 1-2.) In pertinent part, Counterclaim-Plaintiffs allege that they "have on multiple occasions observed an electronic camera position in the house on the Slager Property pointing directly at" Counterclaim-Plaintiffs' house, including "[o]n at least one occasion . . . at the area of the house . . . that includes the bedroom occupied by Counterclaim-Plaintiffs' teenage daughter." (Countercl. ¶¶ 6-7.) Counterclaim-Plaintiffs contend, "[u]pon information and belief," that the camera has taken pictures of Counterclaim-Plaintiffs, their family, and others on the property. (Countercl. ¶ 8.)

---

[2] For each counterclaim, Counterclaim-Plaintiffs have alleged Counterclaim-Defendant's intent generally and damages suffered as a result of Counterclaim-Defendant's conduct and actions generally as well. (Countercl. ¶¶ 9, 19, 21, 23-25, 33-34, 37-38.) The Court is not going to quote each of these allegations but instead notes the foregoing citations to the allegations.

Further, Counterclaim-Plaintiffs allege that Counterclaim-Defendant has a generator located almost on the boundary line between the properties, the use and maintenance of which "violates industry safety standards" and is "unreasonably loud and noisy." (Countercl. ¶¶ 12-14, 18.) They assert that they "are reasonably concerned that a generator malfunction could result in a fire that could extend" onto their property. (Countercl. ¶ 15.) These circumstances with the generator "substantially diminish[]" and "unreasonably interfere" with the "use, enjoyment and value of their property." (Countercl. ¶¶ 19-20.) In addition to the camera and generator issues, Counterclaim-Plaintiffs allege that "Counterclaim-Defendant, or his agents acting at his direction, supervision or control, or subject to Counterclaim-Defendant's subsequent ratification, have entered upon the Bell/Scannell Property" without their consent, including placing and maintaining "objects" on Counterclaim-Plaintiffs' property such as "an irrigation water line, a garden, a fence, and gate posts." (Countercl. ¶¶ 23-24.)

Finally, Counterclaim-Plaintiffs allege that, around March 22, 2020, Counterclaim-Defendant filed a notice of *lis pendens* in the York County Registry of Deeds – therefore making a statement that he had a claim to title or other legal property interest – regarding litigation that did not concern title to their property. (Countercl. ¶¶ 27-28, 32.) Because title was not at issue in the litigation for which the *lis pendens* was filed, Counterclaim-Plaintiffs contend Counterclaim-Defendant's statement otherwise was false and disparaged Counterclaim-Plaintiffs' title to their property. (Countercl. ¶¶ 28-30, 32.) By filing this *lis pendens*, Counterclaim-Plaintiffs allege that Counterclaim-Defendant acted with an ulterior motive by using legal process in a manner that was improper in the regular conduct of litigation. (Countercl. ¶¶ 36-37.)

## DISCUSSION

Counterclaim-Defendant moves to dismiss each of the counterclaims on various bases. The

3

Court addresses each in turn.

1.  Invasion of privacy (Count I).

The tort of invasion of privacy protects several interests from being invaded. As is relevant to the counterclaim, "intrusion upon the plaintiff's physical and mental solitude or seclusion" is one manner in which a defendant can commit the tort of invasion of privacy. *Estate of Berthiaume v. Pratt*, 365 A.2d 792, 795 (Me. 1976). In order to survive a motion to dismiss a claim of invasion of privacy by intrusion upon seclusion, a plaintiff must allege facts regarding four elements: "an (1) intentional, (2) physical intrusion (3) upon premises occupied privately by a plaintiff for purposes of seclusion, and (4) the intrusion must be highly offensive to a reasonable person." *Lougee Conservancy v. CitiMortgage, Inc.*, 2012 ME 103, ¶ 16, 48 A.3d 774. "[T]he defendant must *intend* as the result of his conduct that there be an intrusion upon another's solitude or seclusion." *Id.* ¶ 19 (emphasis in original) (quotation marks omitted). Counterclaim-Defendant moves to dismiss the invasion of privacy claim because he contends the counterclaims do not contain adequate allegations of the first and second elements, i.e., intent or physical intrusion.

Regarding the intent element, Counterclaim-Defendant argues that there are no allegations pertaining to his intent in owning the camera.[3] The Court is not convinced. First, allegations regarding a tortfeasor's intent can be stated generally. M.R. Civ. P. 9(b) ("Malice, intent, knowledge, and other condition of mind of a person may be averred generally."). Counterclaim-Plaintiffs averred so generally. (Countercl. ¶ 9.) Counterclaim-Defendant's intent can also be

---

[3] Counterclaim-Defendant terms it a "security" camera and spends much of his argument on the intent issue justifying his use and placement of the camera. While he may ultimately succeed in establishing these as undisputed facts on summary judgment or otherwise convincing a factfinder of their truth, the counterclaim only terms it an "electronic" camera and does not contain any allegations regarding Counterclaim-Defendant's offered justification. Because this is a motion to dismiss for failure to state a claim, the Court is limited to the allegations in the counterclaim and any facts that may reasonably be drawn from those. *Saunders v. Tisher*, 2006 ME 94, ¶ 8, 902 A.2d 830.

4

reasonably inferred from the allegations that the camera has been pointed directly at Counterclaim-Plaintiffs' daughter's bedroom as well as the allegations that the camera has captured images of Counterclaim-Plaintiffs, their family members, and their invitees. *Cf. Nadeau v. Frydrych*, 2014 ME 154, ¶ 8, 108 A.3d 1254.

The allegation that Counterclaim-Defendant has captured images of Counterclaim-Plaintiffs, their family, and their invitees bleeds into Counterclaim-Defendant's argument on the physical intrusion element.[4] The Law Court has explained that an intrusion upon seclusion must involve an "actual invasion of something secret, secluded or private pertaining to the plaintiff." *Nelson v. Me. Times*, 373 A.2d 1221, 1223 (Me. 1977) (quotation marks omitted). As Counterclaim-Plaintiffs highlight, the Restatement section upon which the tort is based notes that an intrusion upon seclusion "may also be by the use of the defendant's senses, with or without mechanical aids, to oversee or overhear the plaintiff's private affairs, as by looking into his upstairs windows with binoculars or tapping his telephone wires." Restatement (Second) of Torts § 652B cmt. b. "[A] complaint should minimally allege a physical intrusion upon premises occupied privately by a plaintiff for purposes of seclusion." *Nelson*, 373 A.2d at 1223. By alleging that Counterclaim-Defendant has pointed the camera at least once at Counterclaim-Plaintiff's daughter's bedroom and has also captured images with the camera, Counterclaim-Plaintiffs have effectively alleged that Counterclaim-Defendant's camera's image-capturing technology has invaded the physical space of Counterclaim-Plaintiffs' seclusion and privacy in their home. This

---

[4] Counterclaim-Defendant contends the Court should not give any "weight" to the upon-information-and-belief allegations of images being captured. The Court notes that under the arguably stricter federal pleading standard, *e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007), upon-information-and-belief pleading is not fatal to a complaint, particularly when "facts alleged 'upon information and belief' . . . are peculiarly within the possession and control of the defendant . . . ." *Lexington Ins. Co. v. Johnson Controls Fire Prot. Ltd. P'ship*, 347 F. Supp. 3d 61, 64 n.1 (D. Mass. 2018). Facts regarding the capturing of images from the camera would be "peculiarly within the possession and control of" Counterclaim-Defendant. The allegation is sufficient at this stage.

is enough to withstand the motion to dismiss on this claim.

2. Nuisance (Count II).

A claim for private nuisance under common law requires allegations of the following:

> (1) the defendant acted with the intent of interfering with the use and enjoyment of the land by those entitled to that use, with intent meaning only that the defendant has created or continued the condition causing the interference with full knowledge that the harm to the plaintiff's interests are occurring or are substantially certain to follow; (2) there was some interference of the kind intended; (3) the interference was substantial such that it caused a reduction in the value of the land; and (4) the interference was of such a nature, duration or amount as to constitute unreasonable interference with the use and enjoyment of the land.

*Johnston*, 2010 ME 52, ¶ 15, 997 A.2d 741 (alteration and quotation marks omitted). "The essence of a private nuisance is an interference with the use and enjoyment of land." *Town of Stonington v. Galilean Gospel Temple*, 1999 ME 2, ¶ 15, 722 A.2d 1269 (quotation marks omitted).

Going beyond each specific element, Counterclaim-Plaintiffs' argument essentially is that the Court permitted Counterclaim-Defendant's similarly pled nuisance claim to survive a motion to dismiss which means Counterclaim-Plaintiffs' should also survive. (Opp. Mot. Dismiss 7.) Despite this, there is a key difference between the nuisance claims: Counterclaim-Defendant's allegations of safety concerns (which went to the interference and the possible resulting harm) were supported by an engineering report citing to specific building codes that were supposedly violated. As the Court emphasized in its prior Order, the incorporated expert report was key to Counterclaim-Defendant's (in that Order, the Plaintiff) nuisance claim: "the Plaintiff has adequately pleaded facts in the Amended Complaint (along with findings made in David Price's report) supporting the three necessary elements of nuisance: intentional acts; interference in use or enjoyment of the land; and harm that is substantial, unreasonable, and not speculative." (Order Mot. Dismiss (Mar. 6, 2020).) In contrast, Counterclaim-Plaintiffs have only alleged in a

6

conclusory fashion that the "maintenance and use of the generator in its present location violates industry safety standards." (Countercl. ¶ 14.) The Court concludes that this conclusory allegation is not sufficient to support an alleged interference that causes substantial harm for a nuisance claim. *Cf. Meridian Med. Sys., LLC v. Epix Therapeutics, Inc.*, 2021 ME 24, ¶ 3, 250 A.3d 122 (quotation marks omitted) ("The complaint must describe the essence of the claim and allege facts sufficient to demonstrate that the complaining party has been injured in a way that entitles him or her to relief."). The allegation that the generator is loud and noisy simply does not meet the element of the interference being "of such a nature, duration or amount as to constitute unreasonable interference with the use and enjoyment of the land." *Johnston*, 2010 ME 52, ¶ 15, 997 A.2d 741 (quotation marks omitted). The motion is granted regarding the nuisance claim.

3. <u>Trespass (Count III).</u>

"A person is liable for common law trespass irrespective of whether he thereby causes harm to any legally protected interest of the other, if he intentionally enters land in the possession of the other, or causes a thing or a third person to do so." *Medeika v. Watts*, 2008 ME 163, ¶ 5, 957 A.2d 980 (quotation marks omitted). Counterclaim-Defendant contends Counterclaim-Plaintiffs have not sufficiently alleged the necessary intent.

"The minimum intent necessary for the tort of trespass to land is simply acting for the purpose of being on the land or knowing to a substantial certainty that one's act will result in physical presence on the land." *Gibson v. Farm Family Mut. Ins. Co.*, 673 A.2d 1350, 1353 (Me. 1996) (quotation marks omitted). As Counterclaim-Plaintiffs have alleged that Counterclaim-Defendant or those acting at his direction have placed and maintained items on Counterclaim-Plaintiffs' property such as "an irrigation water line, a garden, a fence, and gate posts," it is reasonable to infer that Counterclaim-Defendant or those acting at his direction intentionally acted

7

for the purposes of placing and maintaining those items. *See Saunders*, 2006 ME 94, ¶ 8, 902 A.2d 830. The motion to dismiss is denied regarding the trespass claim.

4. Slander of title (Count IV).

To support a claim for slander of title, a complaint must contain allegations that "(1) there was a publication of a slanderous statement disparaging claimant's title; (2) the statement was false; (3) the statement was made with malice or made with reckless disregard of its falsity; and (4) the statement caused actual or special damages." *Colquhoun v. Webber*, 684 A.2d 405, 409 (Me. 1996). As noted in the allegations section above, the slander of title claim is based on Counterclaim-Defendant's filing of the *lis pendens* in the York County Registry of Deeds. Counterclaim-Defendant argues for dismissal of this claim on the basis that the filing of the *lis pendens* is afforded absolute privilege, the *lis pendens* does not assert a claim to title in Counterclaim-Plaintiffs' property, and the facts alleged do not support a cause of action for slander of title.

In order to analyze this claim, it is first necessary to note that a *lis pendens* is required in an "action in which the title to real estate is involved . . . ."[5] 14 M.R.S. § 4455. The absolute privilege permits a

> party to a private litigation . . . to publish slanderous material concerning the title of another in the institution of . . . a judicial proceeding in which he participates, if the matter has some relation to the proceeding. The privilege is absolute and protects a party to a private litigation . . . from liability . . . irrespective of his purpose in publishing the defamatory matter, of his belief in its truth or even his knowledge of its falsity.

*Raymond v. Lyden*, 1999 ME 59, ¶ 6, 728 A.2d 124 (footnote, citation, and quotation marks omitted); *see also OfficeMax Inc. v. Sousa*, 773 F. Supp. 2d 190, 237 (D. Me. 2011) ("This

---

[5] The Court concluded as much when it granted Counterclaim-Plaintiffs' motion to cancel the *lis pendens* and noted that "title for the real estate is not at issue in this case." (Order re: *Lis Pendens* 1 (Apr. 28, 2020).)

8

privilege attaches to otherwise defamatory third-party communications preliminary to or during litigation only as long as the 'remarks are pertinent to the judicial proceeding' and not 'unnecessary or unreasonable.'"); *cf. Ringier Am. v. Enviro-Technics*, 673 N.E.2d 444, 447 (Ill. App. 1996) ("[N]early every jurisdiction to consider the question has extended the absolute privilege accorded statements made in the course of litigation to include the filing and/or recording of a *lis pendens* notice, provided the underlying litigation makes allegations affecting some ownership interest in the subject property.").

As the quotations make apparent, there may be specific facts bearing on whether the privilege applies because the allegedly slanderous material must bear "some relation to the proceeding" and not be "unnecessary or unreasonable." Counterclaim-Plaintiffs have alleged that the litigation does not concern title to their property, which at least generates an inference that the filing was "unnecessary" at this stage of the case where the Court must accept the well-pleaded allegations as true and view the complaint in the light most favorable to the Counterclaim-Plaintiffs. (Countercl. ¶ 32.) While the Law Court has upheld the application of the privilege to a slander of title claim at the motion to dismiss stage, *Raymond*, 1999 ME 59, ¶ 6, 728 A.2d 124, the Court believes that determination is better left for a different procedural stage in the context of this case.[6] *Cf. Rubinstein v. Keshet Inter Vivos Tr.*, No. 17-61019-Civ, 2019 U.S. Dist. LEXIS

---

[6] Counterclaim-Defendant makes passing reference in his reply brief to the *lis pendens* being conditionally privileged. Determinations regarding conditional privilege tend to be analyzed at summary judgment. *See, e.g.*, *Waugh v. Genesis Healthcare LLC*, 2019 ME 179, ¶ 18, 222 A.3d 1063; *Lester v. Powers*, 596 A.2d 65, 72 (Me. 1991); *Gautschi v. Maisel*, 565 A.2d 1009, 1011-12 (Me. 1989). The Court does not have before it the factual record necessary to make such a determination.

On a separate note, Justice Lipez's decision cited to in the briefs was a case where title was actually at issue in the litigation referenced by the *lis pendens*. The party filing the *lis pendens* was seeking specific performance of a purchase and sale agreement for real estate (i.e., title to real estate was undeniably at issue). *Street & Co. v. Carr*, No. CV-91-1537, 1992 Me. Super. LEXIS 173, at *1-2 (July 15, 1992). It is distinguishable on those facts.

9

35963, at \*10 (S.D. Fla. Mar. 5, 2019) (citation and quotation marks omitted) ("[A]n intentional, wrongful filing of a notice of lis pendens will support an action for slander of title . . . . This means that — if Plaintiffs intentionally filed a wrongful lis pendens — that conduct could fall outside the scope of the litigation privilege."); *Carrozza v. Voccola*, 90 A.3d 142, 155 (R.I. 2014) (quoting 53 Corpus Juris Secundum *Libel and Slander; Injurious Falsehood* § 313 at 410 (2005)) ("[A] cause of action for slander of title may arise when a false, sham, or frivolous lis pendens is filed . . . ."); *Warren v. Bank of Marion*, 618 F. Supp. 317, 325 (W.D. Va. 1985) ("[T]he filing of a notice of lis pendens is more appropriately characterized as a qualifiedly privileged occasion.").

As it pertains to Counterclaim-Defendant's argument that the *lis pendens* does not assert a claim to title in Counterclaim-Plaintiffs' property, the Court disagrees. By recording a *lis pendens* pursuant to 14 M.R.S. § 4455, which is required in an "action in which the title to real estate is involved," in a case in which title to Counterclaim-Plaintiffs' real estate is not involved, Counterclaim-Defendant effectively told anyone who looked at the Registry that he was involved in litigation over title to Counterclaim-Plaintiffs' real estate. (Countercl. ¶¶ 27-28, 30-32.) Counterclaim-Plaintiffs have otherwise alleged the necessary elements for a claim of slander of title. (Countercl. ¶¶ 27-34.) The motion is denied regarding the slander of title claim.

5.  Abuse of process (Count V).

Finally, as it pertains to Counterclaim-Plaintiffs' abuse of process claim, Counterclaim-Defendant raises the issue of the absolute privilege discussed above. The Court incorporates its prior discussion about the privilege in this section and declines to rule on that basis at this stage of the case on this claim as well. Counterclaim-Defendant also argues that the filing of a *lis pendens* is not "process" as that term is used in the context of an abuse of process claim. "[A] claim for abuse of process[ involves] (1) the use of process in a manner improper in the regular conduct of

10

the proceeding, and (2) the existence of an ulterior motive." *Advanced Constr. Corp. v. Pilecki*, 2006 ME 84, ¶ 23, 901 A.2d 189 (quotation marks omitted). Thus, a preliminary issue must be determined regarding whether the filing of a *lis pendens* constitutes "process."

The parties have not directed the Court to any Law Court decisions that are specifically on point. In short, the Court agrees with Counterclaim-Defendant that the filing of a *lis pendens* is not legal "process." "Notice of *lis pendens* commences no action, commands no act, and confers no obligation of appearance. . . . [N]otice of *lis pendens* alone creates no lien or claim on the property. A notice of lis pendens is not process; it is merely notice of process." *Brass Ring, Inc. v. Johnson*, Nos. 12-1496, 12-1532, 2013 W. Va. LEXIS 1240, at *13-14 (Nov. 8, 2013). *Pilecki* is distinguishable on the basis that it involved the filing of a lien, not a notice of *lis pendens*. 2006 ME 84, ¶¶ 23-24, 901 A.2d 189 ("[F]iling a lien statement containing 'material misstatements of fact' could constitute abuse of process."). Therefore, Counterclaim-Plaintiffs' abuse of process claim must be dismissed as a matter of law.

The Court is aware there are varying statements across jurisdictions about whether a *lis pendens* notice can be "process" in the context of an abuse of process claim. *Compare Angoon v. Hodel*, 836 F.2d 1245, 1248 (9th Cir. 1988) ("Because *lis pendens* is not 'process,' its filing does not trigger an action for abuse of process."), *and Cent. Radio Co. v. Warwick Builders, L.L.C.*, No. CL20-8580, 2021 Va. Cir. LEXIS 142, at *6 (Cir. Ct. June 28, 2021) ("I do not agree that a *lis pendens* is 'process.'"), *with Pond Place Partners, Inc. v. Poole*, 567 S.E.2d 881, 893, 897 (S.C. Ct. App. 2002) ("The majority of cases from other jurisdictions that have dealt with the question have held that such filing [of a lis pendens] enjoys the absolute privilege that is accorded to judicial proceedings. . . . The jurisdictions are in agreement that the proper action against a maliciously filed lis pendens is under abuse of process or malicious prosecution."), *and Superior Constr., Inc.*

11

*v. Linnerooth*, 712 P.2d 1378, 1382 (N.M. 1986) ("[A]lthough slander of title may not provide a remedy to persons in the Linnerooths' position who have been wronged by a filing of a notice of lis pendens, such wrongful filing may support an action for abuse of process."). Accordingly, the Court accepts the reasoning of those courts that conclude the filing of a *lis pendens* is not "process," and grants the motion regarding the abuse of process claim.

The entry is:

1. Counterclaim-Defendant Randy Slager's motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** as it pertains to Counts II (nuisance) and V (abuse of process). The motion is **DENIED** as it pertains to Counts I (invasion of privacy), III (trespass), and IV (slander of title).
2. The Clerk is directed to incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated: 7/15/2021 _____

_____
**Hon. M. Michaela Murphy**
**Justice, Maine Superior Court**

12

STATE OF MAINE                                    BUSINESS AND CONSUMER COURT
CUMBERLAND, ss.                                   Location: Portland
                                                  DKT. NO. BCDWB-RE-2019-14

RANDY SLAGER,                              )
                                           )
    Plaintiff/Counterclaim-Defendant,      )
                                           )
v.                                         )      **ORDER ON PLAINTIFF'S RULE**
                                           )      **56(f) MOTION**
LORI L. BELL and JOHN W.                   )
SCANNELL,                                  )
                                           )
    Defendants/Counterclaim-Plaintiffs.    )

This case involves a dispute between neighbors in Kennebunkport (the "Town") over the construction of a retaining wall on Defendants' property close to the boundary line between the properties. The first claim at issue in Plaintiff Randy Slager's operative complaint is a claim for private nuisance. Presently before the Court are a number of motions. One such motion that affects the proceedings on another motion is Plaintiff's Rule 56(f) motion. In that motion, he seeks to continue proceedings on and conduct discovery regarding Defendants Lori Bell and John Scannell's motion for summary judgment on Plaintiff's nuisance claim. The Court held oral argument on the Rule 56(f) motion on June 2, 2021.[1] After considering the parties' arguments on this motion as well as the summary judgment motion, it issues this decision.

Maine Rule of Civil Procedure 56(f) provides the following:

> Should it appear from the affidavits of a party opposing the motion [for summary judgment] that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

---

[1] At that oral argument the parties also argued Plaintiff's pending motion to dismiss Defendants' counterclaims. A separate order will issue regarding that motion.

1

The Law Court has said that Rule 56(f) motions must:

> (1) be made within a "reasonable time" after the filing of a summary judgment motion; (2) place the [trial] court on notice that movant wants the court to delay action on the summary judgment motion . . . ; (3) demonstrate that movant has been diligent in conducting discovery, and show "good cause" why the additional discovery was not previously practicable with reasonable diligence; (4) set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist, and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion; and (5) attest that the movant has personal knowledge of the recited grounds for the requested continuance.

*Bay View Bank, N.A. v. Highland Golf Mortgagees Realty Tr.*, 2002 ME 178, ¶ 22, 814 A.2d 449.

Here, Defendants' motion for summary judgment on Plaintiff's nuisance claim is based on three closely related legal arguments: (1) the nuisance claim is barred by claim preclusion; (2) the nuisance claim is barred by issue preclusion; and (3) the nuisance claim is barred by the doctrine of exhaustion of administrative remedies. As Defendants frame it, "[t]he facts on which the MSJ is based consist squarely of the sequence of events at the Town level, the allegations and arguments Plaintiff asserted there, the Town CEO's decision, Plaintiff's appeal to the York County Superior Court, Plaintiff's allegations in Count I, and the overlap between all of the above." (Def.'s Opp. to 56(f) Mot. 2.) Plaintiff contends the proceedings on the motion for summary judgment must be continued to allow him to conduct discovery to permit him to respond effectively to the motion. He argues he needs additional discovery – including depositions of contractors and Defendants' structural engineer, as well as conducting an inspection of the retaining wall – "[i]n order to make factual determinations regarding the construction, structural integrity, and safety of the raised patio retaining wall . . . ." (Pl.'s 56(f) Mot. 4.) He further notes that his success on his nuisance claim depends, in part, on demonstrating that the wall "is structurally insufficient and unsafe . . . ." (Pl.'s 56(f) Mot. 5.)

2

By seeking the discovery that he does, Plaintiff essentially seeks to respond to Defendants' motion for summary judgment by arguing the factual merits of his nuisance claim. However, the factual merits of his nuisance claim are not at issue in Defendants' motion for summary judgment. Instead, there must first be a legal determination made regarding whether his nuisance claim is barred by preclusion or a failure to exhaust administrative remedies. Whether his claim is barred by judicial legal doctrines is different than whether the wall is structurally insufficient and unsafe, i.e., whether his claim has factual merit. Perhaps tellingly, Plaintiff does not clearly articulate "how the emergent facts, if adduced, will influence" whether his nuisance claim is barred by preclusion or a failure to exhaust administrative remedies. *Highland Golf Mortgagees*, 2002 ME 178, ¶ 22, 814 A.2d 449. His Rule 56(f) motion is denied.

The entry is:

1. Plaintiff Randy Slager's Rule 56(f) motion is **DENIED**.
2. The Clerk will schedule oral argument on Defendants Lori Bell and John Scannell's motion for summary judgment to take place within 45 days of the date of this order.
3. The Clerk is directed to incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated: 7/15/2021

_____
**Hon. M. Michaela Murphy**
**Justice, Maine Superior Court**

3

RANDY SLAGER,

      Plaintiff

v.

                  **COMBINED ORDER ON PLAINTIFF'S MOTION
                  TO COMPEL INSPECTION AND DEFENDANTS'
                  MOTION TO STAY**

LORI L. BELL and
JOHN SCANNELL,

      Defendants

Before the Court are two motions: Plaintiff's Motion to Compel Inspection dated May 6, 2020 and Defendants' Motion to Stay dated May 8, 2020. The parties have adjoining residences on Ocean Avenue Kennebunkport and are involved in litigation before the Town, the York County Superior Court, and this Court. The Court recently conferred telephonically with counsel to discuss the status of the municipal appeals and information it had mistakenly received that the Superior Court matter had been "stayed." In fact, the Court was simply awaiting this Court's decision on the Plaintiff's Application to transfer the Superior Court Rule 80B case to this Court. That application had been objected to by the Town who is not a party in the above-captioned matter, and the Court rejected that application.

Plaintiffs seek an Order under Rules 7, 26, 34, and 37 of the Maine Rules of Civil Procedure to enter upon Defendants' property so that his agents and/or contractors can inspect the construction of retaining walls to see if they were built to code and to generally accepted

1

engineering standards in pursuit of the claims for Nuisance and Trespass still pending in this Court. Defendants seek an Order staying those claims and assert that the alleged violations of the Town's land use ordinance and/or permits – which Plaintiff claims are pertinent to their Nuisance claim - present essentially the same allegations made to the Town in administrative proceedings.

The Plaintiff is represented by Attorneys Alan R. Atkins, Fulton Rice and David Lourie. Defendants are represented by Attorney Daniel L. Rosenthal. The Court has reviewed the parties' motions and for reasons stated grants the motion to stay in part, and denies the motion for entry and inspection without prejudice.

*Motion to Stay*

The Defendants assert that the doctrine of primary jurisdiction and exhaustion of administrative remedies require that the case before this Court be stayed until Plaintiff's appeals of a number of municipal decisions are resolved. Plaintiff asserts that under federal law "extreme circumstances" must be present before this Court should do anything to further delay this matter. In addition, Plaintiff emphasizes that the case before this Court are claims for nuisance and trespass, although the alleged violations of the Town Ordinance and safety standards have been offered by Plaintiff as evidence in this matter that the Defendants' retaining walls present dangers that amount to nuisance. The Court agrees that there is significant overlap in the allegations made by Plaintiff in this matter and in the municipal proceedings. The Court would further note that administrative proceedings are still ongoing, and that only one appeal has made its way to Superior Court as of the date of this Order.

2

The Court concludes after review of the history of this litigation in this Court, in the York Superior Court, and as the Court currently understands the proceedings still underway before the Town of Kennebunkport, that a stay of the Nuisance and Trespass claims that remain pending in this Court should be granted. The Court agrees that the overlap between at least the nuisance claim and the safety and code violations alleged before the Town is so significant as to be almost complete. The Court's only hesitation in granting a stay is that the Business and Consumer Court has as one of its goals the prompt resolution of cases. However, that concern is outweighed here by the overlap in factual and legal allegations, and the likelihood that the Plaintiff could obtain much if not all of the relief he seeks should he prevail in the administrative proceedings before the Town and the York County Superior Court. And importantly, the Town of Kennebunkport has significant interests in the administrative and Superior Court proceedings, and its role in this contentious dispute cannot fairly be addressed here as this case is currently configured. While Plaintiff suggested that he might consider bringing the Town into this case, the Court expects that would be vigorously opposed by the Town and the Defendants, and could result in further delays and unnecessary expenditure of judicial and litigation resources.

The Court will not, however, grant an open-ended stay as Defendants request. Instead, the Court will stay this matter until September 11, 2020. On or before that date, the parties shall file with the Court a letter updating the Court on the status of any matter that remains pending before the Town of Kennebunkport, or before the York County Superior Court. The Court will then consider whether to extend the stay or to issue an amended Scheduling Order permitting this matter to move forward.

*Motion to Compel Inspection*

In this Motion, Plaintiff asks the Court to permit his agents and contractors to enter upon Defendants' property and inspect construction done pursuant to certain permits issued by the Town. In support of this request, Plaintiff relies upon the recommendation of his structural engineering expert, David Price, who indicates a willingness and ability to determine if the construction was done in accordance with engineering standards and Town ordinances. Plaintiff claims that the construction poses a real threat to the safety of the Plaintiff and the general public. The safety issue is portrayed, in part, as whether the retaining walls in question bear on ledge. If it does not, according to Mr. Price, it is subject to "stability failure." [Plaintiff's Motion, pg. 2]. While Plaintiff states that any such inspection would be done at Plaintiff's cost and that the Plaintiff would "restore Defendants' property to the same condition it was prior to the inspections" Defendants characterize the proposal as Plaintiff planning to "roll a backhoe onto Defendants' land and tear apart expensive retaining walls…" [Defendants' Opposition, pg. 1]. Perhaps in recognition of this argument, Plaintiff's Reply scales back the inspection request "in order to minimize the burden of the inspection on Defendants and focus on those portions of Defendant's construction which most impact Plaintiff's property." [Plaintiff's Reply, pg. 1] However, Plaintiff still asks for "excavation underneath and around the base of Wall A11" and "testing and inspection of Wall A11 at critical points" to ascertain the structural design of all the materials used to construct and support it." *Id*. pg. 2.

The Court is also aware that the Town of Kennebunkport has inspected this same construction to determine if it complies with ordinances and/or presents safety issues. It also

seems apparent that the adequacy of the Town's efforts is the subject of contention and litigation before the Town and perhaps the York Superior Court.

The Court concludes that the Plaintiff has failed to explain how "excavation" (to use his term) is required for the kind of "inspection and measuring, surveying, photographing, testing, or sampling" that is envisioned under Rule 34 for entry upon another person's property. In addition, the Plaintiff seems to concede that this excavation, as well as the testing and inspection of the wall "at critical points" could in fact damage the wall - otherwise the Plaintiff would not likely propose that he pay to "repair" any such damage. More fundamentally, the Plaintiff has failed to convince the Court that there is any immediate or urgent need to for the Court to order such a significant intrusion upon his neighbor's property at this time. It would seem more prudent to take this issue up again when the parties confer with the Court in mid-September, if the Plaintiff wishes to pursue it at that time. By then the administrative process will be much further along, and hopefully the validity of the Town's own inspections of the same property would have been validated, or not, by the York Superior Court.

The entry will be: Defendants' Motion to Stay is granted in part. Plaintiff's Motion to Compel Inspection is denied without prejudice. This Order may noted on the docket by reference pursuant to Rule 79(a) of the Maine Rules of Civil Procedure.

**July 9, 2020**_____          _____/S_____
**DATE**                                             **M. Michaela Murphy**
                                                 **SUPERIOR COURT JUSTICE**

**RANDY SLAGER**
    *Plaintiff(s)*
      **v.**

**LORI L. BELL and**
**JOHN W. SCANNELL**
    *Defendant(s)*

| | |
|---|---|
| *Randy Slager* | **Alan R. Atkins, Esq.**<br>**Fulton Rice, Esq.**<br>100 Commercial St, Suite 305<br>Portland, ME 04101 |
| *Lori L. Bell*<br>*John W. Scannell* | **Daniel L. Rosenthal, Esq.**<br>16 Middle Street, Unit 501<br>Portland, ME 04101 |

STATE OF MAINE                                BUSINESS AND CONSUMER COURT
CUMBERLAND, ss                               BCD-RE-19-14

RANDY SLAGER

      Plaintiff

v.                                **ORDER ON MOTION TO DISMISS**

LORI L. BELL and
JOHN SCANNELL,

      Defendants

## BACKGROUND

Before the Court is Defendants' Rule 12(b)(6) Motion to Dismiss all three Counts of Plaintiff's Amended Complaint for Nuisance (Count 1); Trespass (Count II); and Equitable Relief (Count III). The Plaintiff is represented by Attorney Alan Atkins and Attorney Fulton Rice. Defendants are represented by Attorney Daniel Rosenthal, Attorney Jennie Clegg, and Attorney Trey Milam. Oral argument on the motion was heard on February 28, 2020. The Court has reviewed the parties' filings and considered their oral arguments, and issues the following order denying the motion as to Count I (Nuisance) and Counts II (Trespass), but granting it as to Count III (Equitable Relief).[1]

---

[1] The Plaintiff seems to concede that Count III is not a separate cause of action, and the Defendants seem to agree that dismissal of this Count would not preclude Plaintiff from obtaining equitable relief if Plaintiff prevails on any claim. The Court therefore dismisses Count III as it is not a cause of action but could be an available form of relief in this matter depending on the outcome.

1

## STANDARD OF REVIEW

A motion to dismiss tests the legal sufficiency of a Complaint, but the Court must view the evidence in each claim "in the light most favorable to determine whether it sets forth a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *McCormack v. Crane,* 2012 ME 20, par. 5, 37. Because Maine is a notice pleading state, only a short, plain statement of a claim must be made sufficient to provide the defendant with fair notice of the cause of action. *Town of Stonington v. Galilean Gospel Temple,* 1999 ME 2, par. 14.

### *Count I: Nuisance*

In order to prevail on a claim for common law nuisance, the Plaintiff must show that: 1) the defendant acted with the intent of interfering with the use and enjoyment of the land by those entitled to that use; 2) there was some interference with the use and enjoyment of the land of the kind intended, although the amount and extent of that enjoyment may not have been anticipated or intended; 3) the interference that resulted and the physical harm, if any, from that interference proved to be substantial…the substantial interference required is to satisfy the need for a showing that the land is reduced in value because of the defendant's conduct; and 4) the interference that came about under such circumstances was of a such a nature, duration or amount as to constitute unreasonable interference with the use and enjoyment of the land. *Charlton v. Oxford,* 2001 ME 104, par. 366. The Defendants argue that Plaintiff has failed to adequately plead any set of facts that even in the light most favorable to Plaintiff would establish any of these elements.

With respect to the element of intent, as Plaintiff points out the Law Court in *Charlton* has indicated that what must be established is intent to create the condition which interferes with

Plaintiff's enjoyment of the land. *Id.* par. 37. The Amended Complaint alleges that Defendants intended to build and did build the raised patio and retaining walls that Plaintiff claims constitute the nuisance, so that element has been sufficiently pled. In addition, with respect to the interference element, the Amended Complaint alleges that the patio and walls sit on the Plaintiff's boundary line in violation of the Defendants' building permit. It could be arguably inferred from these allegations that Defendants interference was intentional.

Defendants' primary argument regarding Count I[2] is that Plaintiff has failed to allege that he was harmed in any substantial way. Indeed, Defendants claim that all that Plaintiff has done is express fear or concern about loss of enjoyment or value in the property, without more. This not only means, according to Defendants, that Plaintiff has failed to adequately plead actual harm, but that Count I should be dismissed as not being ripe. The Court has reviewed the report of Plaintiff's expert, David Price, which is an Exhibit to Plaintiff's Amended Complaint. The report states that the construction was done in violation of building codes, that the retaining walls were not "bearing on ledge" - meaning they are subject to "frost heaves and overturning" and hence unsafe. Par. 36, 37 to Amended Complaint. In addition, the Amended Complaint cites to the report's finding that the retaining walls are unstable and were constructed without full-width capstones or through-stones which present safety concerns. *Id.* par. 38.

In the light most favorable to Plaintiff, which is how the Court must view the allegations, the Plaintiff has adequately pleaded facts in the Amended Complaint (along with findings made

---

[2] Defendants also ask the Court to consider documents that were not part of the Amended Complaint, causing Plaintiff to ask the Court to treat the motion to dismiss as one for Summary Judgment. Plaintiffs are correct that official public documents, documents central to a plaintiff's claim or referred to in the complaint can be considered by the Court on a Rule 12(b)(6) motion to dismiss without the Court holding a defendant to the requirements of Rule 56. See, *Greif v. Independent Fabrication,* 2019 ME 142, par. 4. While Exh.A, B and C to the motion are either public documents or are arguably central to Plaintiffs' claim, the Court reject consideration of Exh. D which is a photograph that purports to be a "better copy" of a photograph included in the expert report appended to Plaintiffs' complaint. However, the Court does not find Exhibits A-C to be pertinent to the standard that the Court must apply in deciding this motion, as more fully explained in fn. 3. Below.

in David Price's report) the three necessary elements of Nuisance: intentional acts; interference in use or enjoyment of the land; and harm that is substantial, unreasonable, and not speculative. The Court will therefore deny the motion with respect to Count I. [3]

### *Count II: Trespass*

Defendants argue that Count II should be dismissed as it refers only to Defendants' "contractors" when describing the conduct that Plaintiff alleges constitutes trespass. Defendants accurately describes the language in the Amended Complaint, and they are correct that under Maine law there is no vicarious liability for an employer for torts committed by an independent contractor who is not an "agent" of the employer. *Bonk v. McPherson,* 605 A.2d 74, 78 (1992). However, as Defendants acknowledge, an employer can be held liable for tortious acts of independent contractors depending on the facts of the case and the nature of the relationship between the contractor and the entity or person who engages the contractor. In *Bonk,* the Law Court also stated that "In certain circumstances, a party can be held liable for the trespass of an otherwise independent contractor if the trespass was authorized as part of the contract, or was the natural result of the work contracted to be done." *Eaton v. European & N. Am. Ry. Co.,* 59 Me. 520, 526 (1872).

The Court agrees with Defendants that Plaintiffs have not been particular or specific as to their theory of how the Defendants "contractors" were acting as agents under applicable Maine law. However, as Plaintiffs point out, the Law Court in *Bonk* had the benefit of a full evidentiary

---

[3] Defendants also argue that the Plaintiff has brought this claim for common law nuisance "to avoid his own failure to seek administrative remedies" through proceedings in his municipality. [Defendants' Motion, pg. 15]. The Court is not certain how this argument is to be analyzed given the confines of how the Court in this Rule 12(b)(6) motion is obligated to analyze the pleadings and allegations in the light most favorable to Plaintiff.

4

record that had been presented to a jury in coming to its conclusion that the contractor was not an agent. The standard here compels the Court to decide whether Plaintiffs have set forth "elements of a cause of action or allege(s) facts that would enable the plaintiff to relief pursuant to some legal theory." *McCormick v. Crane,* 2012 ME 20, par. 5.

Plaintiffs have alleged just enough facts to withstand this motion at this stage. Depending on factual development, Defendants' legal challenge to Count II can be brought again at a later stage.

The entry will be: Defendants' Motion to Dismiss is GRANTED as to Count III but is DENIED as to Counts I and II. The Clerk may note this Order on the docket by reference pursuant to Rule 79(a) of the Maine Rules of Civil Procedure.

__3/6/2020_____                    _____/S_____

      **DATE**                                        **M. Michaela Murphy**

                                         **Justice, Business and Consumer Court**

**RANDY SLAGER**
        *Plaintiff(s)*
            **v.**

**LORI L. BELL and**
**JOHN W. SCANNELL**
        *Defendant(s)*

**Randy Slager**                    *Alan R. Atkins, Esq.*
                                    *Fulton Rice, Esq.*
                                    100 Commercial St, Suite 305
                                    Portland, ME 04101

**Lori L. Bell**
**John W. Scannell**                *Daniel L. Rosenthal, Esq.*
                                    16 Middle Street, Unit 501
                                    Portland, ME 04101